L. P. ATHAS, Richard L. Bird, Jr., Robert H. Bird et al., Plaintiffs,

v.

Sam DAY, Defendant.

Civ. No. 5394.

United States District Court
D. Colorado.

Aug. 31, 1960.

See also, 161 F.Supp. 916.

William D. Blood of Stone & Blood, Denver, Colo., and Richard L. Bird, Jr., Salt Lake City, Utah, for plaintiffs.

Gene E. Fischer, Fort Collins, Colo., Fred M. Winner and Warren O. Martin, Denver, Colo., for defendant.

KERR, District Judge (assigned).

This case involves the application of the Securities Act to transfers of management stock from one director of the Uranium Petroleum Company, J. Darrell Nicodemus, to a second director of the corporation, Sam Day; and from the second director to a third party, L. P. Athas; and thence to several individuals. Some of the individual purchasers, together with L. P. Athas bring this suit against Sam Day for damages and to recover the consideration paid for the stock.

The jurisdiction of this Court is invoked on the basis of alleged violations of the Federal Securities Act, 15 U.S. C.A. §§ 77e and 77l, diversity of citizenship and the requisite amount in controversy. The first four causes of action are spurious class actions, and the fifth and sixth causes of actions are individual actions based on common-law fraud. Plaintiffs claim that due to said alleged violations, the defendant is liable to them on each count in the sum of $63,-576 plus interest and costs of this action. Robert Bird, John Kelly and P. G. Paulos seek to recover not only the amount of money they personally invested in the stock, but also the sum due their partners or associates who are not parties to this action. At the close of the trial they asserted for the first time a trust relationship with the individuals who contributed money to the purchase of the stock. There was no allegation in the complaint nor proof in the trial of any trust imposed upon these parties by their joint venturers, and no cognizance of any trust has been taken by the Court. Their claims are therefore reduced, one-half in the case of Bird and Paulos, and more than two-thirds in the case of Kelly. In view of the finding of this Court, however, it is unnecessary to cal-

culate the actual consideration paid by each plaintiff. For reasons hereinafter discussed, the defendant's motion, at the close of the trial, to dismiss the complaint is granted.

A chronological summary of the transactions between the parties will facilitate a critical analysis of their stock distribution plan. In August or September 1954, defendant, an incorporator and director of the Uranium Petroleum Company, acquired the stock in question from J. Darrell Nicodemus, also an incorporator and officer. Defendant's interest in mining properties plus some cash were exchanged for the stock. Thereafter, Bill Angelos appears to have been a prime instigator in moving the stock. He and the defendant met in California with a group of potential investors, not parties to this action. The precise date of this meeting is not clear but it appears to have been in January or February 1955. Between February 15 and 20, 1955, Athas and Angelos met in Las Vegas, during which meeting the availability of the stock was discussed and representations concerning it were made by Mr. Angelos. In the latter part of February 1955, Athas met with Richard Bird, Robert Bird and John Kelly in Salt Lake City. He reported on the availability of the stock and repeated the representations made to him by Angelos. As a result of this meeting that group decided to purchase several blocks each containing 25,000 shares of stock. It was arranged that a special account should be opened in the name of Athas to which account the purchase money should be deposited, and out of which account Athas would pay defendant for the stock. Some of the money was deposited by prospective purchasers directly to the account; Angelos deposited the money of the purchasers whom he procured; and Athas also deposited some of the funds.

After this plan was devised in March 1955, Athas went to Phoenix, Arizona, to meet with Angelos and the defendant. Athas had been instructed by the Salt Lake City group to purchase the stock for them with the condition that the representations made by Angelos be verified by Richard Bird, who represented the Salt Lake City purchasing group. The condition was satisfied by a telephone conversation on March 5, 1955, between Day and Richard Bird. These representations allegedly related to the status and control of the corporation, the ownership of the corporate stock, the future plans of Day relative to the organization and management of the corporation, the existence and identification of other prospective purchasers of stock, the income of the corporation from oil-producing property, and principally the statement that the stock would be free trading by June 15, 1955.

That afternoon defendant received the 13 stock certificates totalling 315,000 shares in the name of J. Darrell Nicodemus, together with an assignment from Nicodemus to Day, and an assignment dated March 5, 1955, from Day to Athas. Athas thereupon gave defendant a check in the amount of $63,000 payable out of his special account, and representing 20 cents per share for the stock. Defendant requested Athas to sign the so-called investment letter which in substance stated that Athas was purchasing the stock as a speculation and a private investment and that he agreed to hold it indefinitely for investment, and not for public sale or redistribution. Day also suggested that Athas prepare similar investment letters for the individuals who were purchasing from Athas. This Athas did. The evidence shows that Athas considered the investment letter a mere formality. Avowedly he did not intend to retain the stock as an investment. He declared that "inasmuch as it hadn't been qualified, there was no other name for it". Athas, personally, purchased 6,000 shares at 20 cents a share, all of which he sold within 30 days after March 5, 1955, for 23 cents a share. He also profited from the sale of additional shares which he had purchased from another investor.

In the latter part of April 1955, and again in late May or the early part of June, Athas, Robert and Richard Bird

and John Kelly, discussed with Day his progress in qualifying the stock and they were assured that he was taking the necessary steps to accomplish the desired result. Day did not qualify the stock. Eventually certificates were issued in the names of the individual purchasers, who declined to accept them due to the prospective litigation. During the trial the stock was tendered into court.

█ In the fifth and sixth causes of action plaintiffs allege that defendant induced plaintiffs to purchase the stock by fraudulently misrepresenting material and substantial facts relating to the shares of stock, to the organization and management of the Uranium Petroleum Company, and to defendant's association therewith. I will not elaborate on these allegations or the attendant prayers for the reason that plaintiffs' evidence completely and utterly failed to substantiate their allegations of fraud.

The second and fourth causes of action and Paragraph 4 of the first cause of action likewise must be dismissed. Plaintiffs allege that they are entitled to recover the amount of the consideration paid for the stock, together with interest from March 5, 1955, pursuant to the provisions of Section 77l(1). Section 77l(1) creates a civil liability in any person who sells a security in violation of Section 77e which requires a registration to be in effect before securities may be sold in interstate commerce. There is no dispute as to the subject of the sale being a security and that no registration statement was filed. Neither is there any dispute that the transactions constituted an offering and sale of a security involving interstate commerce or the mails or interstate communication. Defendant does not claim exemption from these provisions.

█ Actions brought to enforce a liability under Section 77l(1) must be commenced within one year after the alleged violation. 15 U.S.C.A. § 77m. The sale complained of was made on March 5, 1955; the complaint was filed on June 11, 1956. Patently any civil liability which might have arisen for the sale of unregistered securities has been outlawed by Section 77m on March 5, 1956.

Plaintiffs attempt to avoid the time limitation by asserting that various acts which were essential to the completion of the sale extended the date of the sale either to July 1955 when the 13 separate assignments were delivered to Richard Bird to be forwarded to the various purchasers; or to November or December 1955 when the Securities Exchange Commission cleared the certificates and they were forwarded to the Registrar and Transfer Company to be transferred to the new purchasers; or to February 18, 1956 when the Registrar and Transfer Company issued new certificates to the plaintiffs and mailed them to Richard Bird. It would be a perversion of the requirements and purpose of the Act to permit such elasticity. The limitation of actions under Section 77l(1) is an integral part of plaintiff's rights and defendant's liability. The statutory violation is the sale of the unregistered securities. The facts clearly support defendant's contention that the sale was completed on March 5, 1955, when plaintiff Athas received the stock, when the assignment was executed from defendant to Athas, and when he tendered the check in full payment therefor.

In the first cause of action Athas sues in a representative capacity for himself and for certain named individuals, and also "for other persons similarly situated" and alleges violation of Section 77l (2) of 15 U.S.C.A., by virtue of a sale of a security by means of untrue statements of material facts. Paragraph 6 of the first cause of action states that a sale was made to Athas "in the course of which" certain statements were made by defendant and by others in his behalf. There is no claim or proof that the sale and the allegedly untrue statements were made to Richard L. Bird, Jr., Robert H. Bird, John H. Kelly, P. G. Paulos, or others similarly situated. In the prayer Athas alone seeks to recover judgment. As fully explored hereinafter, Athas is not entitled to recover personally.

■ It has already been held, and I am in firm accord, that this is a spurious class action, that as such it "involves separate causes of action", and that each party to a spurious class action must stand or fall on his own allegations and evidence in support thereof. Athas et al. v. Day, D.C.Colo.1958, 161 F.Supp. 916. The identity of the "other persons similarly situated" appears only in the exhibit attached to the third amended complaint and their individual causes are not set forth. The evidence is devoid of any proof in behalf of the plaintiffs other than Athas and the prayer does not particularize the amount claimed by each plaintiff. The first cause of action is dismissed for failure to state a claim against the defendant.

■ There is no doubt in my mind but that plaintiff Athas is an "underwriter" within the purview of the Act and as such is not entitled to the protection of the Act. Under the facts and circumstances adduced in the trial, it clearly appears that the defendant transferred the stock to Athas without consideration and for the sole purpose of sale to other parties. In fact, the sale to the other plaintiffs was prearranged before the stock was assigned to Athas. Except for the shares which Athas bought personally and promptly sold within the month the purchase money was collected by Athas and Angelos from the various Los Angeles and Salt Lake City purchasers. Athas was not dealing with his personally owned stock when he received the assignment of the 315,000 shares. Under the rule enunciated in Shaw v. United States, 9 Cir., 1942, 131 F.2d 476, a person is a dealer when he deals with stock issued by another person, in this case, defendant's stock.

The case of Securities and Exchange Commission v. Culpepper, 2 Cir., 1959, 270 F.2d 241, 247, is parallel in many respects to the case at bar, and the findings and conclusions therein are applicable with respect to Athas' untenable position as a plaintiff. In the Culpepper case, as in the case at bar, the stock was distributed to stockholders who sold it to various brokers and dealers, who in turn sold it to the public, including an individual named Grayson, who also sold it to the public. It was there held that the brokers and dealers and also Grayson were "underwriters" as defined in the Act due to their common or close control and privity of contract with the issuer. The Court of Appeals for the Second Circuit found that the Act exempts transactions between individual investors but does not exempt "distributions by issuers or acts of other individuals who engage in steps necessary to such distribution, even if such individuals themselves do not come within the definition of 'issuer, underwriter, or dealer'". Securities and Exchange Commission v. Culpepper, supra.

The record is replete with evidence that Athas was the contact man between the purchasers and the defendant; that he was the negotiator of the sales to the other plaintiffs. Athas was simply a conduit for the transfers of the money and of the stock as is evidenced by the references in his testimony to the "actual purchasers" for whom he was buying the stock. Athas and Angelos profited 3 cents on each share of stock sold. Athas testified that he collected about $25,000, which at the rate of 23 cents per share would amount to about 108,695 shares of stock and which would indicate a profit of about $3,260. It cannot be successfully contended that Athas was a victim rather than a participant in the plan to dispose of the Nicodemus stock. Stadia Oil & Uranium Co. v. Wheelis et al., 10 Cir., 1957, 251 F.2d 269. Day, Angelos, and Athas all participated in the acquisition and sale of the Nicodemus stock. See Gilligan, Will & Co. v. Securities and Exchange Commission, 2 Cir., 1959, 267 F.2d 461; Securities and Exchange Commission v. Guild Films Co. et al., D.C.N.Y. 1959, 178 F.Supp. 418. The Act does not "protect those who are engaged in steps necessary to the distribution of security issues". Securities and Exchange Commission v. Chinese Consol. Benev. Ass'n, Inc., 2 Cir., 1941, 120 F.2d 738, 741. Athas cannot now claim damages from

Day and the third amended complaint with respect to Athas is hereby dismissed.

In the third cause of action plaintiffs Richard L. Bird, Jr., Robert H. Bird, John H. Kelly and P. G. Paulos predicate defendant's liability on Sec. 77*l*(2), 15 U.S.C.A., the material portion of which reads as follows:

"Any person who— * * *

"(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of section (a) of section 77c of this title), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of * * * oral communication, which includes an untrue statement of a material fact * * * (the purchaser not knowing of such untruth * * *) and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth * * *, shall be liable to the person purchasing such security from him, * * *."

The limitation for an action under this section is one year from the discovery of the untrue statement. 15 U.S.C.A. § 77m. It is possible to conclude from the evidence that the plaintiffs did not discover the alleged untruths until after June 15, 1955, the day on which the stock was to have been "cleared". They commenced their action, therefore, within one year from the discovery of the alleged untrue statements.

The gravamen of the third cause of action is whether or not the plaintiffs were misled by the statements of the defendant. The question turns on whether the defendant induced the sale of stock to these plaintiffs by means of untrue statements of material facts. I have determined from the pleadings and the evidence that the defendant did not deceive or mislead the plaintiffs herein.

■ If plaintiffs are entitled to recover at all, they must sustain their burden of proving the falsity, materiality, and excusable ignorance concerning the statements listed in paragraph four of the third cause of action. Woodward v. Wright, 10 Cir., 1959, 266 F.2d 108. The record does not show that this burden was met. The alleged untrue and material statements are set out in the third amended complaint as follows:

"a. Defendant stated that he was in control of Uranium Petroleum Corporation.

"b. Defendant stated that he owned and had recently purchased the Reed Tuft stock of said corporation in the amount of 615,000 shares.

"c. That defendant had just purchased the Nicodemus stock in said corporation for $102,000.00.

"d. That the S. A. Healey Company, of New York City, had purchased 300,000 shares of said stock and desired to purchase all of the stock that it could obtain.

"e. That brokers and buyers in Los Angeles desired all of said 615,-000 shares of stock and that said stock could be readily sold in Los Angeles.

"f. That the corporation had a steady income of $3,000.00 per month from oil royalties.

"g. That the stock would become free trading stock in June, 1955."

No clear-cut, convincing evidence was introduced by these plaintiffs that the above-quoted statements were the means by which the sale of the stock to them was effected and that they were untrue.

I am not convinced that the telephone conversation between Day and Richard Bird was the means by which the sale was effected. It appears to me that plaintiffs decided to buy the stock at half its then market value because they were getting a good deal. They were, however, sufficiently informed in the uranium business to require a verification directly from the defendant.

As a matter of fact, Robert Bird, for the most part, was relying on what was

told to him by his brother, Richard Bird, who was a practicing attorney in Salt Lake City. There was no evidence that Robert Bird actually discovered that the statement that the stock would be "free-trading" stock as of June 15, 1955, was an untrue statement. He knew, only, from what his brother told him, that he did not have the stock on June 15th because the transfer agent would not transfer the stock. Robert Bird testified that in the summer of 1955 he learned that there was some oil income "but not anything like we had been told". He stated, also, that he had never made a determination that Day did not control the corporation or did not own the controlling interest in the corporation.

John H. Kelly testified that the information concerning the availability of the stock came to him from Athas. Later on he learned from Richard Bird of his telephone conversation with defendant and of his statements that the stock "would be freed and transferable and be so we could sell the stock on the market" on June 15th and that it was Nicodemus stock which was to be purchased. Plaintiff Kelly did not prove that he bought the stock on the strength of these statements or that they were false.

Pete Paulos was influenced more by his brother-in-law, Athas, than on the allegedly false statements of defendant. Paulos talked only with Athas. He did not know what kind of restriction was on the stock but relied on Lou Athas' statements that the stock would be clear for sale on June 15th and that Sam Day was going to keep his interests in the company, replace some of the board members, and keep up the company as a going concern. He testified that he first learned of the falsities on June 15th when he "didn't receive the stock". In my opinion, this testimony amounts to an unwarranted conclusion and does not constitute evidence of untrue, material statements. Failure to receive the stock does not support the claim of the falsity of the above recited allegations.

Richard Bird initially acquired his information about the stock and the corporation from Athas, who had told him about his visit in Las Vegas and about the information Athas gleaned from Angelos. His information directly from defendant was after the plans and arrangements were made to buy the stock upon the condition that the information given by Athas was confirmed by Day.

There was a certain amount of contradictory evidence concerning the weight placed on these statements by Richard Bird. It appears that he considered the statements more as "promises" than as factual statements concerning the status of the company property and of the company's economic condition. In his letter to the stockholders preparatory to instituting this suit he said, in part, that "It is certain that Sam Day did not endeavor to perform his promises with reference to this stock and the Uranium Petroleum Company".

■ I believe that the provisions of the Securities Act cannot be extended to include promises, plans, or conclusions when it imposes a penalty on untrue "statements". The falsity of the statements in paragraphs 4(a) to (g), inclusive, in the third cause of action does not appear in the record nor does it appear that such statements were calculated to influence the sale to these plaintiffs.

From what I have said I hold that the plaintiffs have failed to sustain the material allegations alleged in their several counts and that judgment should be rendered in favor of the defendant.

This memorandum opinion will be treated as findings of fact and conclusions of law. Counsel for defendant will prepare judgment of dismissal and submit the same within 10 days from and after the filing of this memorandum. The clerk will assess costs against the plaintiffs.

All the stock tendered to the Court at the close of the trial and placed in the Court Registry is ordered returned to the plaintiffs.