[No. 37606. En Banc. July 16, 1964.]

THE STATE OF WASHINGTON, *Appellant,* V. STERLING
THEATRES CO. *et al., Respondents.**

*Reported in 394 P. (2d) 226.

*The Attorney General, Fredric C. Tausend* and *C. David Sheppard, Assistants,* for appellant.

*Ferguson & Burdell,* for respondents Sterling Theatres Co. *et al.*

*Lycette, Diamond & Sylvester,* by *John N. Sylvester,* for respondents Forman *et al.*

*Chester C. Adair* (of *Jordan & Adair*), for respondent Hamrick Theatres Corporation.

*Bogle, Bogle & Gates, Robert W. Graham, Ronald E. Mc-Kinstry, Ronald T. Schaps* and *William L. Dwyer,* for respondents Columbia Pictures Corporation *et al.*

*William N. Goodwin* and *Thomas H. S. Brucker* (*William H. Orrick, Jr., Lionel Kestenbaum,* and *Donald L. Hardison,* of counsel), for amicus curiae.

FINLEY, J.—This lawsuit challenges the efforts of the state of Washington to enforce recently enacted state antitrust legislation (The Consumer Protection Act of 1961, RCW 19.86) against a segment of an industry which unquestionably carries on part of its activities in interstate commerce. The appellant state is seeking injunctive and other relief against four groups of motion picture exhibitors owning or operating motion picture theatres in the greater Seattle area[1] and certain film distributors who own or control copyrights to the films which they license to the

---

[1]The four groups are, for convenience, denoted as Sterling, Forman, Hamrick and Evergreen. Sterling is comprised of several companies, including Sterling Theatres Company, operated as a single operating organization by the estate of John Danz. Forman refers to William Forman, doing business as United Drive-In Theatres; Hamrick to Hamrick Theatres Corporation; and Evergreen to Evergreen State Amusement Corporation.

exhibitors for display.[2] The complaint alleged violations of sections 3 and 4 of the Consumer Protection Act, which reads as follows:

"Every contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful." (RCW 19.86.030)

"It shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce." (RCW 19.86.040)

The focal point of the complaint and the state's enforcement activity was the Sterling Theatre group, which was alleged to have monopolized second-run exhibition of feature films in Seattle, and to be attempting to monopolize subsequent runs of commercial feature films in like manner. Specific acts of monopolization on the part of Sterling are set out, along with further allegations that all four of the respondent exhibitor groups have combined and conspired to restrain trade by dividing the market of feature films among themselves on a prearranged basis, and that they have been aided in the unlawful arrangements by the respondent distributors.

After hearing argument, the trial court granted the respondents' motion to dismiss for lack of jurisdiction over the subject matter. The three contentions of the respondents accepted by the trial court as the basis for dismissal may be summarized as follows:

(1) The applicability of sections 3 and 4 of the Consumer Protection Act to interstate commerce has been preempted by the Congress in enacting the Sherman Act.

(2) The application of the state act to the motion picture industry would constitute a direct interference with and a burden upon interstate commerce.

(3) The state act, § 17, by its own terms exempts respondents' transactions here in question, because, as pro-

---

[2]The distributor respondents are Columbia Pictures Corporation, Metro-Goldwyn-Mayer, Inc., Paramount Film Distributing Corporation, 20th Century-Fox Film Corporation, United Artists Corp., Universal Film Exchanges, Inc., and Warner Bros. Pictures Distributing Corp.

vided in § 17, the transactions are otherwise regulated by an officer acting under a federal statute.

■ The first two contentions—(1) the asserted preemption, and (2) the asserted burden on interstate commerce—may conveniently be considered together. The Sherman Act is coextensive in scope with the federal commerce power, and is devoid of any express provision of Congress preempting the power of the states to regulate concurrently respecting the antitrust field. This being so, the factors which must be considered in reference to an implication of congressional intent to preempt the field of antitrust regulation are essentially the same as those involved in the balancing test used to determine whether the commerce clause would exclude state action of its own force, irrespective of a federal statute.

■ It is well established that state action incidentally affecting commerce is valid when there exists sufficient local significance and impact to justify the exercise of the police power. *Standard Oil Co. of Kentucky v. Tennessee ex rel. Cates* (1910), 217 U. S. 413. The exhibition of motion pictures is a prime example of an industry which has a primarily local impact, regardless of the interstate activities of film distributors in making the films available. *Leader Theatre Corp. v. Randforce Amusement Corp.* (1945), 186 Misc. 280, 58 N. Y. S. (2d) 304. The existence of the predominantly local interest dispels the contentions of the respondents that the federal interest in antitrust enforcement should be considered so dominant as to render concurrent state jurisdiction an impermissible interference.

■ Factors which might generate an implication that Congress intended to fully occupy the field and preempt concurrent state activity are wholly absent in this area. Uniformity of regulation was expressly foregone when antitrust enforcement was permitted by not only the United States Attorney General and the Federal Trade Commission, but also by private litigants. The nearly identical wording of the disputed provisions of the Consumer Protection Act and sections 1 and 2 of the Sherman Act indi-

cates that the motive or goal of federal and state regulation is the same, and leads to the conclusion that state enforcement, far from frustrating or interfering with federal purpose or national policy, will actually further it. For like conclusion, see *State v. Southeast Texas Chapter of Nat. Elec. Contractors Ass'n,* 358 S. W. (2d) 711 (Tex. Civ. App. 1962); *State v. Allied Chemical & Dye Corp.* (1960), 9 Wis. (2d) 290, 101 N. W. (2d) 133; *Peoples Sav. Bank v. Stoddard* (1960), 359 Mich. 297, 102 N. W. (2d) 777, 83 A.L.R. (2d) 344; *Commonwealth v. McHugh* (1950), 326 Mass. 249, 93 N. E. (2d) 751; *Leader Theatre Corp. v. Randforce Amusement Corp.* (1945), 186 Misc. 280, 58 N. Y. S. (2d) 304. In this connection we also note the submission in the present cause of an amicus curiae brief by the United States, urging upon this Court the principle of concurrent state regulation of antitrust matters. The conclusion is inescapable that the Consumer Protection Act is neither an impermissible burden on interstate commerce nor preempted by the federal antitrust acts, including the Sherman Act.

The third and final contention upon which the dismissal was based is that the state act exempts the transactions here in issue by its own terms. The provision relied upon is § 17 of the act, which reads as follows:

"Nothing in this act shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington public service commission, the federal power commission or any other regulatory body or officer acting under statutory authority of this state or the United States."

The respondents assert that the Attorney General of the United States, acting under the Sherman Act, could regulate the transactions here complained of; that he is an "officer acting under statutory authority of . . . the United States," and that, therefore, the situation is expressly exempt from the scope of the state act. Keeping in mind that few businesses of significant size or importance are modernly considered beyond the reach of the commerce clause,

and thus the Sherman Act which is coextensive with it, we come to the question of whether the state legislature intended to limit the scope of the act to those rare instances completely unreachable under the Sherman Act.

■■ We are forced to conclude that such an interpretation would be overly restrictive, unreasonable, and would frustrate the clear intent of the legislature. The legislative history of the act is consonant with results produced by application of normal rules of statutory construction. The term, "regulatory officer," must be read in connection with both the preceding terms and the intent of the entire act. The governing rule of interpretation is that precise terms modify and restrict the interpretation of the general terms where both are used in sequence. *State v. Thompson* (1951), 38 Wn. (2d) 774, 232 P. (2d) 87. We conclude that the term, "regulatory officer," does not include the Attorney General of the United States in his capacity of enforcing the federal antitrust laws.

■ The respondents also contend that they are *regulated* within the meaning of § 17 of the act, due to certain surveillance and enforcement activities undertaken by the federal authorities pursuant to consent decrees prohibiting certain conduct and practices, primarily in the distribution end of the movie industry, in *United States v. Paramount Pictures* (1948), 334 U. S. 131. We are satisfied that such decrees do not make the movie business a regulated industry within the meaning of the state act. It is unnecessary to reach any questions concerning concurrent regulation of identical conduct by federal and state authorities, as none of the conduct here complained of was essentially controlled by the *Paramount* decrees. See: *State v. Southeast Texas Chapter of Nat. Elec. Contractors Ass'n,* 358 S. W. (2d) 711 (Tex. Civ. App. 1962). In *State v. Allied Chemical & Dye Corp.* (1960), 9 Wis. (2d) 290, 101 N. W. (2d) 133, a situation similar to this case existed, and it was held that the existence of a Federal Trade Commission cease-and-desist order against the industry was not such regulation as would conflict with action under the state antitrust laws.

We are convinced that the trial judge erred in granting the motion dismissing this lawsuit, and that the judgment below must be reversed. It is so ordered.

OTT, C. J., HILL, WEAVER, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

DONWORTH, J., concurs in the result.