MATANUSKA MAID, INC., Appellant,

v.

STATE of Alaska, Appellee.

ARDEN–MAYFAIR, INC., Appellant,

v.

STATE of Alaska, Appellee.

Nos. 4640, 4641.

Supreme Court of Alaska.

Nov. 21, 1980.

Eric L. Hanson, Abbott, Lynch, Farney & Rodey, Anchorage, for appellant Matanuska Maid, Inc.

James D. Gilmore, Anchorage, Roy L. Shults, and Edward M. Medvene, Mitchell, Silberberg & Knupp, Los Angeles, Cal., for appellant Arden Mayfair, Inc.

Mark E. Ashburn, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

CONNOR, Justice.

In this appeal, appellants challenge the constitutionality of the investigative demand procedures authorized by the Alaska Unfair Trade Practices and Consumer Protection Act (AS 45.50.471 et seq.) and the Alaska Restraint of Trade Act (AS 45.52.-200 et seq.).

The facts, insofar as they are material to appellants' claims, are not in dispute. Arden–Mayfair, Inc. (Arden) and Matanuska Maid, Inc. (Matanuska) are both corporations doing business in the state of Alaska. On May 23, 1978, each was served with an investigative demand issued by the Alaska

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

Attorney General pursuant to his authority under AS 45.50.495 [1] and AS 45.52.200.[2] The subject of the demand, which requested documents dating back to January 1, 1967, was the conduct of companies selling dairy products in the state of Alaska. In particular, the demands sought information concerning bidding and pricing activities.

On June 15, 1978, Matanuska filed a petition in the superior court to modify or set aside the demand pursuant to AS 45.52.210(f).[3] Arden filed a similar petition on July 19, 1978. On March 13, 1979, after several hearings, including a full evidentiary hearing on the merits, Judge Singleton signed a judgment ordering the requested documents be produced. This appeal followed.

## I. Jurisdiction

■ Before proceeding to the merits of the case, a word must be said about this court's jurisdiction to hear this appeal. Although the issue is evidently one of first impression in this jurisdiction, we are satisfied that the enforcement or denial of a civil investigative demand is final and therefore appealable.

■ The test for determining whether a judgment is or is not final "is essentially a practical one." *City and Borough of Juneau v. Thibodeau*, 595 P.2d 626, 628 (Alaska 1979). As we noted in *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030–31 (Alaska 1972):

> "The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, '... one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' Further, the reviewing court should look to the substance and effect, rather than form, of the rendering court's judgment, and focus

---

1. As 45.50.495 provides:

   "*Investigative power of attorney general.* (a) If the attorney general has cause to believe that a person has engaged in, is engaging in or is about to engage in, a deceptive trade practice under § 471 of this chapter, he may

   (1) request the person to file a statement or report ·in writing, under oath, on forms prescribed by him, setting out all facts and circumstances concerning the sale or advertisement of property by the person, and other information considered necessary;

   (2) examine under oath any person in connection with the sale or advertisement of property;

   (3) examine property or sample of the property, record, book, document, account or paper that he considers necessary;

   (4) make true copies of records, books, documents, accounts, or papers examined under (3) of this subsection which may be offered in evidence in place of the originals in actions brought under §§ 471–561 of this chapter; and

   (5) under an order of the superior court, impound samples of property which are material to his investigation and retain the sample until proceedings undertaken under §§ 471–561 of this chapter are completed.

   (b) The attorney general, in addition to other powers conferred on him by this section, may issue subpoenas to require the attendance of witnesses or the production of documents or other physical evidence, administer oaths, and conduct hearings to aid an investigation or inquiry. Service of an order or subpoena shall be made in the same manner as a summons in a civil action in the superior court."

2. As 45.52.200 provides:

   "*Powers of the attorney general.* If the attorney general determines, upon complaint or otherwise, that a person has engaged in, or engages in, or is about to engage in an act or practice prohibited or declared unlawful by this chapter, or that a person has assisted or participated in a plan, scheme, agreement or combination of the nature described in this chapter, or when he believes it to be in the public interest, the attorney general may commence an investigation. The attorney general may compel production of documentary material and take testimony, under oath, before the institution of an action under this chapter."

3. AS 45.52.210(f) provides:

   "At any time before the return date specified in the demand, or within 20 days after the demand has been served, whichever period is shorter, a petition to extend the return date for, or to modify or set aside a demand issued under (a) of this section, stating good cause, may be filed in the superior court for the judicial district where the parties reside. A petition by a person on whom a demand is served, stating good cause, to require the attorney general or another person to act in accordance with the requirements of (e) of this section, and all other petitions in connection with a demand, may be filed in the superior court for the judicial district in which the person on whom the demand is served resides."

primarily on the operational or 'decretal' language therein. *Quoting Catlin v. United States*, 324 U.S. 229, 233, [65 S.Ct. 631, 633], 89 L.Ed. 911, 916 (1944)." (footnotes omitted).

Although the present action was brought in superior court in the form of a motion to modify or set aside an administrative demand, the practical effect of the court's order is to require appellants to surrender the requested documents. We, therefore, have no trouble finding that the superior court's order was final and appealable.

## II. Exemption

■ Section 481(1) of the Alaska Unfair Trade Practices and Consumer Protection Act exempts from coverage:

> "[A]n act or transaction regulated under laws administered by the state, by any regulatory board or commission, or officer acting under statutory authority of the state or of the United States, unless the law regulating the act or transaction does not prohibit the practices declared unlawful in § 471 of this chapter."

AS 45.50.481. Appellants assert that insofar as the practices which are the subject of the investigative demand, if proven, would also violate the Alaska Restraint of Trade Act, the above quoted section precludes the Attorney General from issuing an investigative demand pursuant to AS 45.50.495. We disagree. We do not think that the exemption contained in section 481(1) was intended to apply to acts proscribed by the Alaska Restraint of Trade Act.

First, it does not necessarily follow that an act which violates the Unfair Trade Practices and Consumer Protection Act would also violate the Restraint of Trade Act. But even if an act does violate both statutes, we think investigation pursuant to AS 45.50.495 would be appropriate. The prohibition in AS 45.50.471 against "unfair methods of competition and unfair or deceptive acts or practices in the conduct of

trade or commerce" is substantially similar to that contained in section 5(a)(1) of the Federal Trade Commission Act.[4] The legislature has provided that, in interpreting AS 45.50.471, "due consideration and great weight should be given the interpretations of sec. 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)) made by the Federal Trade Commission and the federal courts." AS 45.50.545.

Federal courts have clearly found no incompatability between section 5 and the more narrow federal antitrust laws. An act or transaction which violates the Sherman[5] or Clayton[6] Act would also constitute a violation of section 5; but since section 5 is much broader than either of those acts, an act or transaction need not rise to the level of a Sherman or Clayton violation to be declared an unfair business practice. *See* C. Hills, Antitrust Advisor § 5.4 (2d ed. 1978); P. Areeda & D. Turner, Antitrust Law § 307a (1978). Thus, the Federal Trade Commission can proceed under section 5 against methods that violate the Sherman or Clayton Act or it may utilize the same procedure to nip in the bud unfair methods of competition which have only the potential of becoming Sherman or Clayton violations. *FTC v. Motion Picture Advertising Co.*, 344 U.S. 392, 395, 73 S.Ct. 361, 363, 97 L.Ed. 426, 430 (1953).

Since the bidding and pricing activities under investigation in this case could conceivably lack some essential element of an AS 45.50.010 violation (Alaska's equivalent of the Sherman Act), it is appropriate for the State to investigate as well the possible violation of AS 45.50.471 (Alaska's equivalent of the Federal Trade Commission Act). The State cannot be expected to know with certainty the exact nature of a suspected violation. Indeed, uncertainty is the very reason for conferring precomplaint investigatory authority on the Attorney General. *See Petition of Gold Bond Stamp Co.*, 221

---

**4.** Federal Trade Commission Act § 5(a)(1), 15 U.S.C. § 45(a)(1) provides:

> "Unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce, are declared unlawful."

**5.** 15 U.S.C. § 1 et seq.

**6.** 15 U.S.C. § 12 et seq.

F.Supp. 391, 397 (D.Minn.1963), *aff'd per curiam*, 325 F.2d 1018 (8th Cir. 1964).

■ There is, however, a second reason why the exemption in section 481(1) does not apply to acts proscribed by the Alaska Restraint of Trade Act. If we were to adopt appellants' interpretation, by defining "regulate" as "subject to any prohibitory law," the applicability of the Unfair Trade Practices and Consumer Protection Act would be severely limited. Since the FTC Act prohibits virtually the same conduct proscribed by AS 45.50.471, and since there are few businesses of significant size or importance beyond the reach of the commerce clause, and thus the FTC Act, there would be almost no activity which would remain subject to the provisions of AS 45.50.471 under appellants' interpretation. We think appellants' interpretation would be overly restrictive and would frustrate the intent of the legislature. *See State v. Sterling Theaters, Inc.*, 64 Wash.2d 761, 394 P.2d 226, 229 (1964). We agree with the superior court that a more reasonable construction is that section 481(1) exempts only those acts or transactions which are the subject of "ongoing, careful regulation."

The Supreme Court of Washington has, on two occasions, interpreted a similar exemption provision in its own Consumer Protection Act.[7] In both instances the court rejected the view that authority falling short of ongoing, careful supervision would be sufficient to constitute regulation within the meaning of the Consumer Protection Act. In *State v. Sterling Theaters, Co.*, 64 Wash.2d 761, 394 P.2d 226, 229 (1964), the court held that the Attorney General of the United States, acting in his capacity under the Sherman Act, is not a "regulatory officer" within the meaning of the exemption clause. The court also held that the mere existence of surveillance and enforcement activities "do not make the movie business a regulated industry within the meaning of the Act."

Similarly, in *State v. Reader's Digest Association, Inc.*, 81 Wash.2d 259, 501 P.2d 290 (1972), the court held that the FTC is not a "regulatory body" under the Act because it does not "regulate areas where permission or registration is necessary to engage in an activity." Describing the function of a regulatory body the court said:

"Once the requisite permission is obtained the activity is subject to monitoring and regulation. The FTC, however, is not such an agency. It has no control over entry into its area of concern. It merely monitors the business practices of those who freely enter its domain."

We agree with the basic thrust of the Washington cases. In our recent opinion in *State v. O'Neill Investigations, Inc.*, 609 P.2d 520 (Alaska 1980), we held that unfair acts or practices are exempt under section 481(1) "only where the business is both *regulated and* unfair acts and practices are prohibited" (emphasis in original). Regulation is, therefore, clearly distinct from and involves something more than mere prohibition. In *O'Neill*, we held that regulation under a separate and distinct statutory scheme, without prohibition of the acts and practices thought unfair, is insufficient to trigger the exemption contained in section 481(1). In this case, we are presented with the reverse side of the coin. Here we are faced with a prohibitory statute–the Restraint of Trade Act–unaccompanied by a regulatory framework. Since the Restraint of Trade Act does not regulate the dairy industry within the meaning of section 481(1) the exemption does not apply.

### III. Retroactivity

■ The Alaska Restraint of Trade Act became effective August 5, 1975. The investigative demand issued pursuant to that Act in the present case related to documents "prepared or received since January

7. The Washington statute, RCW 19.86.170, provides:
"Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington public service commission, the federal power commission or any other regulatory body or officer acting under statutory authority of this state or the United States."

1, 1967." Matanuska maintains that to allow the government to seek information concerning matters occurring prior to the effective date of the Act would give retrospective application to the statute contrary to AS 01.10.090.[8]

Concededly, no provision of the Restraint of Trade Act expressly declares that any portion of the Act shall operate retrospectively. Nevertheless, we hold that the statutory changes in the power to investigate brought about by AS 45.52.200 et seq. affect only procedure and that mere procedural changes which do not affect substantive rights are not immune from retrospective application.[9]

AS 01.10.90 does not address the procedural–substantive distinction. Nevertheless, the settled rule of law is in accord with the superior court's decision. See 2 C. Sands, Sutherland Statutory Construction § 41.04, at 253 (4th ed. 1973); 82 C.J.S., Statutes § 412 (1953). In *Larson v. Independent School District No. 314*, 305 Minn. 358, 233 N.W.2d 744 (1975), the court considered an amendment to the state's discovery rule which allowed discovery as a matter of right. Prior law had permitted discovery of certain documents only upon a showing of "good cause." Subsequent to the effective date of the amendment plaintiff attempted to invoke its provisions as to matters arising prior to the effective date. Rejecting the defendant's argument that to do so would give retrospective effect to the statute, the court said:

"Rule 26.02, as amended, does not have the effect, however, of granting plaintiff

access to information which would otherwise have been absolutely private, but merely alters the procedure by which such information is discoverable."

*Id.*, 233 N.W.2d at 748.

Matanuska's reliance on *Aetna Casualty & Surety Co. v. Industrial Accident Commission*, 30 Cal.2d 388, 182 P.2d 159 (1947), is misplaced. In that case the court essentially accepted the proposition that the presumption against retroactive construction does not apply to procedural statutes. Critically, the court said:

"[P]rocedural statutes may become operative when and if the procedure or remedy is invoked, and if the trial postdates the enactment, the statute operates in the future regardless of the time of the occurrence of the events giving rise to the cause of action."

*Id.*, 182 P.2d at 161. Although the statute considered in *Aetna* was procedural in form, the court held that it was "substantive in its effects," *id.*, 182 P.2d at 162, and it was on this basis that the court denied retroactive effect.[10]

We, therefore, conclude that the Attorney General did not retrospectively apply the Restraint of Trade Act by requesting documents executed prior to the effective date of the statute. Matanuska suffers no increased liability as a result of the state's investigatory procedure nor does the procedure otherwise affect Matanuska's substantive rights.

## IV. Rulemaking Power

■ Matanuska next argues that the investigative demand procedure set forth in

---

**8.** As 01.10.090 provides:

"No statute is retrospective unless expressly declared therein."

We have heretofore closely adhered to the clear mandate expressed in the statutory language. Statutes are not to be applied retroactively unless the language used by the legislature indicates the contrary. *City and Borough of Juneau v. Commercial Union Ins. Co.*, 598 P.2d 957, 958–59 (Alaska 1979); *Davenport v. McGinnis*, 522 P.2d 1140, 1142 (Alaska 1974); *Stephens v. Rogers Constr. Co.*, 411 P.2d 205, 208 (Alaska 1966).

**9.** Implicit in our holding is that neither appellant may be prosecuted for acts committed

prior to the Act's effective date. Such acts, however, may be relevant to possible antitrust violations committed after the effective date of the Act.

**10.** In a subsequent case, *Pitts v. Perluss*, 58 Cal.2d 824, 27 Cal.Rptr. 19, 26, 377 P.2d 83, 90 (1962), the court stated that such cases as *Aetna* merely determined that "the legal consequences of a past act or occurrence . . . could not be altered by the subsequent enactment of a statute." In other words, statutes which are substantive in character should not be given retroactive effect.

AS 45.52.200–.210 conflicts with the rule-making power vested in the supreme court by article IV, section 15, of the Alaska Constitution.[11] Specifically, Matanuska maintains that, by authorizing a procedure for the enforcement of an administrative subpoena by means other than that prescribed in the Alaska Civil Rules, AS 45.52.-210(f)[12] directly conflicts with Civil Rule 91(c). That rule provides:

> "*ADMINISTRATIVE SUBPOENAS.* These rules are applicable to proceedings in court to compel the giving of testimony or production of documents in accordance with the subpoena issued or other authority exercised by an officer or agency of the state, except as otherwise provided by order of the court in the proceeding."

Since the legislature did not state by the requisite two–thirds vote its intention to change the Civil Rules, Matanuska contends that section 210(f) is invalid under the clear holding of *Leege v. Martin*, 379 P.2d 447 (Alaska 1963).[13]

The State counters that there is no conflict between section 210(f) and Civil Rule 91(c) because the hearing in the present case was not a proceeding in court to compel production, but was rather a hearing to modify or set aside the investigative demand. We agree. Alaska Civil Rule 91(c)

does not, by its terms, require that the State initiate an action to compel production in order to enforce an administrative subpoena.[14] It merely states that if such a proceeding *is* brought, the Civil Rules shall apply. As we interpret the procedure established by the Restraint of Trade Act, the State is not required to initiate a proceeding to compel production unless the recipient of a valid investigative demand ignores the demand. In that event we think the Civil Rules would apply to a proceeding brought by the State in superior court to compel production. That is not, however, the factual situation before us. Since the State did not move to compel production, Civil Rule 91(c) is not applicable.[15]

### V. Search and Seizure

■ Arden and Matanuska have each launched separate attacks against AS 45.-52.200–.210 on the ground that the investigative demand procedure authorized by that statute constitutes an unreasonable search and seizure. Matanuska's argument is that the investigative demand is constitutionally infirm for failing to provide for judicial review prior to either issuance or enforcement. Arden's argument is that the statutory scheme set out by AS 45.52.-200–.210 is such that a person upon whom a demand is issued must either produce the requested documents or incur criminal lia-

11. Alaska Const. art. IV, § 15 provides:
    "*Section 15. Rule–Making Power.* The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two–thirds vote of the members elected to each house."

12. *See* note 3, *supra.*

13. In *Leege* we said:
    "As a matter of reason and necessity and in order to give article IV, section 15 of the constitution a practical working interpretation, we must hold that a legislative enactment will not be effective to change court rules of practice and procedure unless the bill specifically states that its purpose is to effect such a change." (footnote omitted). 379 P.2d at 451.

14. Whether such a proceeding is constitutionally required as a matter of due process is discussed in part VI of this opinion.

15. Matanuska argues that the interpretation given Federal Rule of Civil Procedure 81(a)(3), which is virtually identical to Alaska Civil Rule 91(c), requires a different result. Citing *United States v. Powell*, 379 U.S. 48, 58 n.18, 85 S.Ct. 248, 255 n.18, 13 L.Ed.2d 112, 119 (1964) and *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), Matanuska maintains that FRCP 81(a)(3) applies to the issuance of administrative subpoenas and summonses and that Rule 91(c) should be given parallel construction. *Powell* and *Donaldson*, however, involved actions initiated by the government to *compel* production. Other cases make it clear that FRCP 81(a)(3) applies only to court action seeking to *enforce* the investigative demand. *United States v. McKay*, 372 F.2d 174, 176 (5th Cir. 1967); *Falsone v. United States*, 205 F.2d 734, 742 (5th Cir. 1953).

bility for non–production, and is thus unreasonable. Both parties make additional arguments under the rubric of search and seizure, which we think are more properly considered under our due process analysis.

We will deal with Matanuska's argument first. Matanuska asserts that the investigative demand in the present case was issued and enforced without prior judicial review and that this constitutes a violation of the fourth amendment proscription against unreasonable searches and seizures. It is apparently Matanuska's position that an investigative demand may only be carried out by first procuring a search warrant or its equivalent, a judicially issued subpoena. This is not the law.

■ Except for limitations concerning breath and relevancy, the fourth amendment does not restrict administrative demands for business records and documents. *See generally* K. Davis, Administrative Law Treatise § 3.05 at 181 (1958), §§ 3.04, 3.05, 3.12 (1970 Supp.); W. LaFave, Search and Seizure § 4.13 (1978). In *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 195, 66 S.Ct. 494, 498, 90 L.Ed. 614, 622 (1946), a case which still sets the standard for review of administrative subpoenas, the court held simply that compliance with an administrative subpoena "presents no actual question of search and seizure." Consequently, a demand for documents may be issued without prior judicial review, and it is sufficient for fourth amendment purposes that the subpoena is issued pursuant to lawful authority, relevant to the inquiry for which it is issued and contains adequate specification of the documents to be produced. *Id.*

Subsequent cases reinforce this reasoning. In *United States v. Tivian Laboratories, Inc.*, 589 F.2d 49, 53 (1st Cir. 1978), the Environmental Protection Agency sought to enforce a request for information issued pursuant to a federal act. Against the claim that compelling production without first obtaining a warrant or court order violates the fourth amendment, the court analogized to a subpoena duces tecum and held:

"A subpoena may be issued without first obtaining a court's permission (citation) and may be enforced without a showing that probable, or even reasonable cause exists to believe that a violation of the law has occurred."

*Id.* at 54. *See also Mid–West Growers Co–Op Corp. v. Kirkemo*, 533 F.2d 455, 461 (9th Cir. 1977); *United States v. Degrosa*, 405 F.2d 926, 929 (3rd Cir. 1969); *Colegio Puertorriqueno v. Pesquera De Busquets*, 464 F.Supp. 761, 766–67 (D.Puerto Rico 1979).[16]

Matanuska maintains that *See v. Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), are contra. Those cases, however, deal with warrantless, unannounced, on–premises searches conducted without probable cause. At least one court has noted the rather obvious distinction between the conduct represented in these cases and the less intrusive demands of an administrative subpoena. *Colegio Puertorriqueno*, 464 F.Supp. at 767 n.6.

Matanuska quotes the following dicta from *See v. Seattle*:

"Given the analogous investigative functions performed by the administrative subpoena and the demand for entry, we find untenable the proposition that the subpoena, which has been termed a constructive search, ... is subject to Fourth

16. It should also be noted that the power to issue investigative demands similar to that authorized in AS 45.52.200–.210 is conferred on various administrative agencies by several federal acts including the Federal Trade Commission Act (15 U.S.C. § 46(a) and (b)), the Public Utility Holding Company Act (15 U.S.C. § 79r), the Natural Gas Act (15 U.S.C. § 717m), and the Federal Power Act (16 U.S.C. § 825f). The authorizing language in each act is virtually identical:

"For the purpose of any investigation or proceeding under this chapter, any member of the Commission, or any officer thereof designated by it, is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence and require the production of any books, papers, correspondence, contracts, agreements, or other records which the Commission deems relevant or material to the inquiry."

Amendment limitations which do not apply to actual searches and inspections of commercial premises." 387 U.S. at 545, 87 S.Ct. at 1740, 18 L.Ed.2d at 947. We think this language is merely expressive of the Court's concern that warrant requirements for on–premises searches should meet the same standard of reasonableness as administrative subpoenas. All of the protections regarded as essential by the court in *See v. Seattle* were provided in the present case. The documents sought by the State were specifically set forth in a formal demand served upon the parties; and the demand itself, though issued by the Attorney General, was not enforced prior to judicial review.

Matanuska's contention that the demand in the present case was *enforced* without prior judicial review misstates the facts. Section 210(f) specifically provides for review in the form of a petition by respondent to modify or set aside the demand. That procedure was invoked by Matanuska and Arden in the present case.

Arden contends that under the statutory scheme set out by AS 45.52.200–.210, merely filing a petition to modify or set aside the demand does not stay the duty to comply; a petitioner is still wilfully disobedient and subject to the penalty provisions of section 210(g). According to Arden, such a procedure is unreasonable because it requires a demandee to comply with the demand or face possibly substantial penalties.

Arden's interpretation was rejected by the superior court. Judge Singleton reasoned that assessment of penalties for failure to comply with the investigative demand was dependent upon the absence of a court order issued in response to a petition to modify or set aside the demand under section 210(f). Accordingly, such a petition, if timely filed, would, in effect, toll the penalty provision in section 210(g) during the pendency of the proceeding. Further, since the court is specifically empowered by section 210(f) to extend the return date of the demand, there is no obstacle to extending that date until all issues presented in the petition are resolved by the court.

Arden maintains that in *Bonjour v. Bonjour*, 592 P.2d 1233 (Alaska 1979), we held that the judiciary may not redraft patently defective statutes. *Bonjour* also held, however, that courts have a duty to construe statutes, where reasonable, to avoid dangers of unconstitutionality. *Id.* at 1237. The question thus presented is whether AS 45.52.200–.210 can reasonably be interpreted to avoid Arden's claim of unconstitutionality.

■ Section 210(g) punishes only "wilful" disobedience. We think a sensible construction of this language is that one who files a petition to modify or set aside an investigative demand does not act in wilful disobedience of the demand and is therefore not subject to the penalty provisions of section 210(g). Our reasoning is substantially supported by *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). In that case, the Supreme Court interpreted section 7210 of the Internal Revenue Code which prescribed punishment for failure to respond to a summons to appear and produce books. Against an argument similar to that put forth by Arden the Court held:

"[T]his statute on its face does not apply where the witness appears and interposes good faith challenges to the summons. It only prescribes punishment where the witness 'neglects' either to appear or to produce."

*Id.* at 447, 84 S.Ct. at 512, 11 L.Ed.2d at 464.

We think Judge Singleton's reading of AS 45.52.200–.210 was reasonable. A person served with an investigative demand suffers no penalty for non–compliance as long as a petition, timely filed under section 210(f), is pending.

### VI. Due Process

■ Arden and Matanuska maintain that placing the burden on the respondent to challenge the investigative demand by filing a petition under section 210(f) violates due process. Appellants' argument is twofold. First, requiring the recipient to initiate the only authorized challenge of the investigative demand violates due process. Second, placing the burden on the recipients

of an investigative demand to show good cause why the demand should not be enforced reverses the traditional procedure and violates due process. We disagree.

Beginning with *Wadley Southern Railway v. Georgia,* 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405 (1914), the Supreme Court has consistently held that due process is satisfied so long as the statutory scheme under review provides an opportunity for testing the validity of an administrative order without incurring debilitating or confiscatory penalties. In reaching this conclusion the Court has, on several occasions, upheld statutory provisions which place the burden of challenging an administrative action on the respondent.

In *Wadley,* for example, a state railroad commission issued an order commanding the respondent to cease and desist certain activity. Although respondent was entitled by statute to challenge the commission's order, respondent failed to exercise this right and refused to comply with the order. The commission then instituted proceedings, as provided by law, seeking substantial penalties for respondent's failure to comply. In rejecting respondent's due process argument the Court said:

> "[T]here is no room to doubt the power of the state to impose a punishment heavy enough to secure obedience to such orders after they have been found to be lawful; nor to impose a penalty for acts of disobedience, committed after the carrier had ample opportunity to test the validity of the statute."

*Id.* at 667, 35 S.Ct. at 220, 59 L.Ed. at 414.

Almost three decades later the Court considered the statutory procedure for judicial review of administrative regulations issued pursuant to the Emergency Price Control Act. That Act provided that the only means of challenging the validity of the Administrator's regulations was by protest to and hearing before the Administrator whose decision was then reviewable in the Emergency Court of Appeals. Rejecting petitioner's claim that this procedure violated due process the Court held in *Yakus v. United States,* 321 U.S. 414, 438, 64 S.Ct. 660, 674, 88 L.Ed. 834, 856 (1943):

> "[T]he statute itself provides an expeditious means of testing the validity of any price regulation, without necessarily incurring any of the penalties of the Act."

In *St. Regis Paper Co. v. United States,* 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961), no provision was even made in the statute for petitioners to challenge the validity of the Federal Trade Commission's demand for documents. When the United States brought an action on behalf of the Commission to compel production and assess penalties for noncompliance, petitioner asserted that to impose such penalties would violate due process because petitioner had no opportunity to obtain judicial review of the Commission's order except at the risk of paying daily fines. To this claim the Court responded:

> "We need not consider this point at length for it appears that petitioner did not try to obtain judicial review prior to the commencement of this action by the Government, nor did petitioner seek a stay once the litigation had begun....
>
> Upon the commencement of the action by the Government, petitioner might have then sought a stay.... Moreover, after the entry of the notices of default by the Commission, petitioner might have itself sought relief before the § 10 forfeitures began to accrue instead of waiting for the Attorney General to sue for their collection." (footnotes omitted).

*Id.* at 225–26, 82 S.Ct. at 299, 7 L.Ed.2d at 252–53. *See also Union Electric Co. v. EPA,* 593 F.2d 299, 306 (8th Cir. 1979), *cert. denied,* 444 U.S. 839, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979); *Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115, 1118–19 (2d Cir. 1975), *cert. denied, sub nom. Brown & Williamson Tobacco Corp. v. Dixon,* 426 U.S. 911, 96 S.Ct. 2237 48 L.Ed.2d 837 (1976); *Ford Motor Co. v. Coleman,* 402 F.Supp. 475, 484–85 (D.D.C.1975), *aff'd,* 425 U.S. 927, 96 S.Ct. 1656, 48 L.Ed.2d 170 (1976).

Since, as we have interpreted the Restraint of Trade Act, a petition to modify or set aside the investigative demand automat-

ically tolls the penalty provisions of section 210(g), it cannot be said that appellants exercise the right of judicial review only at the risk of incurring severe penalties.[17] Appellants were accorded a statutory right to challenge the validity of the State's investigative demand and this is all that due process requires. That appellants must initiate such proceedings does not, according to *Wadley* and its progeny, dictate otherwise.[18]

The foregoing discussion should also dispose of appellants' claim that shifting the burden of proof to appellants to prove the invalidity of the State's demand violates due process. In *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047 (2d Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974), the court held:

"[T]he burden of showing that an agency subpoena is unreasonable remains with the respondent, . . . and where, as here, the agency inquiry is authorized by law and the materials sought are relevant to the inquiry, that burden is not easily met." (citations omitted).

*Id.* at 1056. *See also FTC v. Rockefeller*, 591 F.2d 182, 190 (2d Cir. 1979); *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C.Cir.

17. *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed.2d 596 (1920) and *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), upon which Arden relies, are therefore inapposite.

18. While there is language supportive of appellants' position in *Memphis Light Gas & Water Division v. Craft*, 436 U.S. 1, 18–20, 98 S.Ct. 1554, 56 L.Ed.2d 30, 44–46 (1978) and *United States v. Silberman*, 464 F.Supp. 866, 874 n.4 (N.D.Fla.1979), we do not think these decisions are controlling. *Memphis* involved action by a utility to terminate service without first allowing its customer to challenge his bill. The Court applied a balancing test which weighed the private interest, the government interest and the risk of erroneous deprivation of private rights and concluded that, since utility service is a necessity, the risk of mistaken termination is not insubstantial, and alternative procedures are available, the procedure violated due process.

*Silberman*, which relied on *Memphis*, involved the conviction of a Hare Krishna member for disseminating religious literature and thus concerned weighty First Amendment considerations.

1977), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977).

As a second due process challenge, Arden alleges that the investigative demand issued to appellants failed to adequately apprise them of their right to appeal. We agree. The only notice of such a right contained in the investigative demand was the following excerpt from AS 45.52.-210:

"(g) A person upon whom a demand is served under this section shall comply with the terms of the demand unless otherwise provided by order of court issued in response to a petition filed under (f) of this section."

Such notice was inadequate to apprise appellants of their right to challenge the investigative demand or to inform them of a procedure for effecting such a challenge.

Nevertheless, in light of the fact that Arden and Matanuska actually availed themselves of the right to challenge the investigative demand, we find no prejudice to appellants and hence no denial of due process. The crux of due process is opportunity to be heard and the right to adequately represent one's interests. *See Hansberry v. Lee*, 311 U.S. 32, 42, 61 S.Ct.

If anything, we think the test in *Memphis* supports the State's view since the governmental interest in regulating unfair methods of competition is strong while a corporation's interest in the privacy of its business records is correspondingly weak. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1949); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946).

Appellants also attempt to show that in several regulatory areas the agency or commission serving an administrative subpoena bears the initial burden of instituting action. In each case cited by appellants, however, the statute under consideration specifically provided for enforcement of administrative subpoenas by the courts. The requirement that the agency initiate action was, therefore, of statutory, not constitutional, origin. Moreover, at least in the case of the federal statutes, such provisions are necessary to give the district courts, which are courts of limited jurisdiction authority to hear such matters. *See Kennecott Copper Corp. v. FTC*, 542 F.2d 801, 803–04 (10th Cir. 1978).

115, 118, 85 L.Ed. 22, 27 (1940); *Dolgow v. Anderson,* 43 F.R.D. 472, 500 (E.D.N.Y. 1968); *Northern Natural Gas Co. v. Grounds,* 292 F.Supp. 619, 636 (D.Kan.1968). Adequate notice is the common vehicle by which these rights are guaranteed. Where notice is inadequate the opportunity to be heard can still be preserved and protected if a contestant actually appears and presents his claim. Thus, assuming that the inadequacy of notice in the present case did not hinder preparation or presentation of arguments, we cannot say there has been a denial of due process. *George v. Jernigan,* 262 Ark. 610, 560 S.W.2d 221, 221 (1978); *City of Houston v. Parkinson,* 419 S.W.2d 900, 904 (Tex.Civ.App.1967).

A final due process claim put forth by Arden relates to federal criminal and civil proceedings pending against Arden and Matanuska at the time the investigative demands in this case were issued.[19] Arden maintains that the State may not issue an investigative demand seeking information on identical activities by the same persons and in the same geographical area that are the subject of a pending federal action. We find it unnecessary to reach this issue because we reject Arden's premise. The federal indictment alleges a conspiracy covering the period 1968 to 1974. Although the State's demand requests documents dating back to 1967, the Attorney General may not allege violations occurring prior to August 5, 1975.[20] Thus, unless it can be said that the State's inquiry somehow concerns activities which are the outgrowth of the same conspiracy alleged by the federal government, it seems clear that the State's investigation covers a different period of time than the federal action.

## VII. Attorney's Fees

Pursuant to Alaska Civil Rule 82, the superior court entered an order granting the State, as the prevailing party, attorney's fees in the amount of $2,000. In light of the fact that we have upheld the investigative demand in this case on the basis that the statutory scheme provides an opportunity for testing the validity of the demand without incurring debilitating or confiscatory penalties, we think it would be inconsistent to allow an award of attorney's fees to the State. Subjecting the right to test the validity of the demand to allowance of attorney's fees, if unsuccessful, could have a chilling effect similar to that of imposing a penalty. Since, in this case, appellants' right to petition the court to modify or set aside the investigative demand is specifically set forth in AS 45.52.210(f),[21] and since we cannot characterize appellants' petition as frivolous or taken merely for the purpose of delay, we hold that the superior court abused its discretion in awarding attorney's fees to the State. Consequently, each party should bear its own costs.

AFFIRMED in part and REVERSED in part.

MATTHEWS, J., dissenting in part, with whom BURKE, J., joins.

MATTHEWS, Justice, joined by BURKE, Justice, dissenting in part.

I agree with the majority opinion except in so far as it holds that the superior court abused its discretion in awarding attorney's fees of $2,000.00. I think that the court did not abuse its discretion in making this modest award.

A party having standing may generally obtain judicial review of an administrative

19. While appellants' petitions to modify or set aside the investigative demands in this case were pending, Arden and Matanuska entered pleas of *nolo contendere* to federal charges involving substantially the same matters as those which provided the basis for the investigative demand. A related federal civil action is still pending.

In view of the concluded federal criminal proceedings, the Alaska Attorney General represented to the court in a hearing held November 27, 1978, that the State would not seek to proceed criminally against Arden or Matanuska notwithstanding that the Alaska Restraint of Trade Act permits the use of investigative demands to seek information which may subsequently be used for either civil or criminal proceedings.

20. *See* note 9, *supra.*

21. *See* note 3, *supra.*

determination. *See, e. g., Moore v. State*, 553 P.2d 8 (Alaska 1976); *K & L Distributors, Inc. v. Murkowski*, 486 P.2d 351 (Alaska 1971); K. Davis, Administrative Law Treatise, § 28.08 (Supp.1970). The right to judicial review of administrative action, while broadly granted by such statutes as AS 22.10.020, AS 44.62.300, and AS 44.62.-560 originates in the constitution. *K & L Distributors, Inc. v. Murkowski*, 486 P.2d 351, 357 (Alaska 1971). However, when a party exercises his right to challenge agency action in superior court and loses, the superior court has the power to assess attorney's fees against him. *See* Alaska Rules of Appellate Procedure 45 and 29(d); *Kodiak Western Alaska Airlines, Inc. v. Bob Harris Flying Service, Inc.*, 592 P.2d 1200, 1204–05 (Alaska 1979). The power to award attorney's fees in such cases has existed at least since statehood and has been frequently exercised. We have never regarded such an award as having a chilling effect on the exercise of a party's statutory and constitutional right to seek judicial review and I see no reason to do so here.