**TESORO PETROLEUM CORPORATION and Tesoro Alaska Company, Appellants,**

v.

**STATE of Alaska and Bruce M. Botelho, in his official capacity as Attorney General of the State of Alaska, Appellees.**

**No. S–9379.**

Supreme Court of Alaska.

Feb. 15, 2002.

Douglas J. Serdahely, Patton Boggs, LLP, Anchorage, and James C. Slaughter, Fulbright & Jaworski, LLP, Houston, TX, for Appellants.

Douglas Gardner, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before FABE, Chief Justice, MATTHEWS, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. *INTRODUCTION*

Tesoro Petroleum Company challenges the civil investigative demand (CID) served on the company by Alaska's attorney general as part of an investigation into gasoline prices. Tesoro contends that the CID was overbroad and that the State impermissibly disclosed to outside counsel documents that Tesoro produced in response to the CID. Because Spencer Hosie, outside counsel to the attorney general, should be considered "an authorized employee of the state" for purposes of AS 45.50.592(e), we affirm the superior court's decision to allow disclosure of the documents to Hosie. Moreover, we affirm the superior court's decision that the CID was not "unreasonable and oppressive."

## II. FACTS AND PROCEEDINGS

Upon determining that the public interest would be served by an investigation of possible violations of the Alaska Antitrust Act by Tesoro, the State served a CID on Tesoro, pursuant to AS 45.50.592. The CID described the subject matter of the investigation as "possible price fixing, combinations in restraint of trade, and other anticompetitive fuel refining, marketing, pricing, distribution, and sales practices in the State of Alaska."

The CID contained forty-six specific demands for documents. With the exception of Demand No. 35, which covers the time period of January 1, 1985 through the date of service, the CID covers Tesoro's business practices over a period of approximately ten years, from January 1, 1990 to present. As described by the State, the demands "request information regarding prior statements or testimony, organizational charts to identify potential witnesses, product exchange documents, reports analyzing margins, returns on capital, pricing component information, refining input and output information, transportation costs, etc." The State engaged Spencer Hosie and his law firm, Hosie, Frost & Large, as outside legal counsel to assist in the Tesoro investigation; a written contract established an independent contractor relationship between Hosie and the State.

Tesoro, pursuant to AS 45.50.592(f),[1] filed a petition to modify the CID. Tesoro's arguments to the superior court encompassed two main issues: disclosure of documents to outside counsel and overbreadth of the CID.

First, Tesoro argued that the CID should be set aside or limited because its requirements are "too burdensome and thus contain requirements which would be unreasonable and improper if contained in a subpoena duces tecum issued by a court of this state." At oral argument before Superior Court Judge Peter A. Michalski, Tesoro specified four areas in which the CID was overly burdensome: it covers too many employees, it covers too long a time period, it covers too broad a range of products, and it covers too broad a geographic scope.

Second, Tesoro objected to the disclosure of documents produced under the CID to the State's outside counsel and requested that the court prohibit such disclosure. Tesoro argued that the statute does not authorize Hosie and his firm to review documents produced pursuant to the CID because Hosie and his firm, as outside counsel, are not "authorized employee[s]" under AS 45.50.592(e) and because Tesoro did not consent to disclosure.

In response, the State contended that the document requests reasonably facilitated investigation of the high price of petroleum products in Alaska. The State explained that in order to determine whether antitrust violations had occurred, it required documents from other Pacific markets, regarding all types of petroleum products, and over a time period long enough to determine trends. The State also argued that Hosie should be considered an "authorized employee or designee" under the statute, and that he is therefore permitted to receive responsive documents.

On October 7, 1999, Judge Michalski issued a Memorandum and Order deciding Tesoro's petition. The superior court determined that a reference to Hosie as an "independent contractor" in the contract between Hosie and the State is not relevant to the CID statute. Therefore, the superior court found that "Spencer Hosie is considered an 'employee of the State' in his role as outside counsel in the Attorney General's Alaska Petroleum Products Pricing Investigation for the purposes of AS 45.50.592(e)." The court also determined that "the 'consent' restriction and the term 'authorized employee or

---

1. AS 45.50.592(f) provides:

 At any time before the return date specified in the demand, or within 20 days after the demand has been served, whichever period is shorter, a petition to extend the return date for, or to modify or set aside a demand issued under (a) of this section, stating good cause, may be filed in the superior court for the judicial district where the parties reside. A petition by a person on whom a demand is served, stating good cause, to require the attorney general or another person to act in accordance with the requirements of (e) of this section, and all other petitions in connection with a demand, may be filed in the superior court for the judicial district in which the person on whom the demand is served resides.

designee' was not meant to apply to situations where the state employs outside counsel."

Additionally, the superior court held that "as a whole the CIDs are not 'unreasonable and oppressive.'" Based on "the scope of the Attorney General's authority under the statute, and the deference given to agencies with statutory investigative powers," the court found that the CIDs were neither unreasonable nor improper. The superior court did, however, modify the CID in several ways. It permitted Tesoro to produce responses on a rolling basis, starting ten days following the issuance of the order. The court also limited the CID to cover documents held by personnel with decision-making authority, rather than documents held by any Tesoro employees. In response to Tesoro's complaints about the geographical scope of the CID, the superior court also held that Tesoro did not need to submit documents regarding operations in the Far East. Finally, the superior court struck two demands as confusing and internally inconsistent.

## III. DISCUSSION

### A. Standard of Review

█ Whether the superior court correctly interpreted AS 45.50.592 to hold that Spencer Hosie was an "authorized employee of the state" is a question of statutory construction. We exercise our independent judgment in matters of statutory interpretation.[2] The related issues of Tesoro's right to petition for relief and the appropriate relief under AS 45.50.592(e) are also matters of statutory construction to which we apply our independent judgment.[3]

█ We have previously reviewed superior court orders granting access to documents produced pursuant to AS 45.50.592 under an abuse of discretion standard.[4]

More generally, we commonly "review rulings on discovery for an abuse of discretion."[5] Because we hold that the superior court applied the appropriate standard to its review of the CID, we review the superior court's order under an abuse of discretion standard.[6]

### B. The Superior Court Did Not Err by Allowing the Attorney General to Pass Documents to its Outside Counsel Because Hosie Is an "Authorized Employee of the State" and a "Designee" Under AS 45.50.592(e).

Tesoro argues that the superior court erred by holding that Hosie is an "authorized employee" of the state under AS 45.50.592(e) and allowing him, therefore, to review the CID documents. Alaska Statute 45.50.592(e) establishes the situations in which documents produced in response to a CID may be disclosed or used:

Documentary material produced pursuant to a demand, or copies of it, unless otherwise ordered by a superior court for good cause shown, may not be produced for inspection or copying by, nor may its contents be disclosed to, anyone other than an *authorized employee of the state without the consent of the person who produced the material.* However, under those reasonable terms and conditions the attorney general prescribes, copies of the documentary material shall be available for inspection and copying by the person who produced the material or an authorized representative of that person. *The attorney general, or a designee, may use copies of the documentary material* as the attorney general or designee considers necessary in the enforcement of this chapter, including presentation before a court; however, material that contains trade se-

---

2. *See In re Johnstone,* 2 P.3d 1226, 1231 (Alaska 2000).

3. *See id.*

4. *See Novak v. Orca Oil Co.,* 875 P.2d 756, 763 (Alaska 1994).

5. *Cockerham v. State,* 933 P.2d 537, 539 n. 9 (Alaska 1997).

6. *See In re Sealed Case,* 121 F.3d 729, 740 (D.C.Cir.1997) (holding that while federal appellate courts generally review district court's ruling on subpoena for the production of documentary evidence only for arbitrariness or abuse of discretion, deference is not given if ruling is unsupported by the record or relevant legal standard); *see also Novak,* 875 P.2d at 763.

crets may not be presented except with the approval of the court in which the action is pending after adequate notice to the person furnishing the material.

(Emphasis added.)

### 1. *Alaska Statute 45.50.592(e) relates to post-production disclosure.*

■ Alaska Statute 45.50.592(e)—like its federal counterpart, former 15 U.S.C. § 1313(c)—addresses only *post-production* disclosure of materials produced under a subsection .592(a) CID. Thus, subsection (e)'s literal language operates to restrict production of materials already produced, stating that "material *produced* pursuant to a demand ... may not be produced ... [or] disclosed" except in accordance with the subsection's provisions. The federal cases discussed by the dissent bear this out. They all address issues of "production" *after* the original production.

Thus, subsection (e) addresses cases in which a second generation of production or disclosure would be necessary; it does not purport to address who may be authorized by the attorney general to inspect the originally produced materials without triggering a second round of disclosure or production. That issue is partly covered in subsections .592(a) and (b). Subsection (a) gives the attorney general authority to issue CIDs.[7] And subsection (b) gives the attorney general unqualified power to name any "state employees or representatives" to receive produced materials "for inspection and copying."[8]

■ Here, the attorney general issued the CID for production directly to the attorney general's office. These actions are expressly allowed under subsections .592(a) and (b).

Since the attorney general authorized Hosie to represent the State in investigating Tesoro, and thus could have named him as the specific "representative" to whom the materials were to be produced for inspection, it is impossible to conclude that giving Hosie access to those materials upon their production to the attorney general would amount to an additional round of "production" or "disclosure" within the contemplation of subsection .592(e). As part of the team that the attorney general has assembled to conduct the Tesoro investigation's regular work, then, Hosie and his firm fall within the circle of those having direct authority to inspect the materials produced under the CID, without any further production or disclosure occurring.

### 2. *Contractual definitions*

■ Moreover, even if it addressed the permissible scope of disclosure for the original production of documents under a CID, subsection .592(e) would not preclude disclosure to Hosie in the present case. Tesoro points to the language of the contract between Hosie and the attorney general in support of its argument that Hosie was not an employee of the state to whom documents could be disclosed. The contract specifies: "The contractor and any agents and employees of the contractor act in an independent capacity and are not officers or employees or agents of the State in the performance of this contract." Tesoro reasons that because Hosie is an independent contractor under the contract, he cannot be an "authorized employee of the state" as described in AS 45.50.592.

We are unpersuaded by Tesoro's argument that the retainer contract should, as a matter

---

7. AS 45.50.592(a) states:

 If the attorney general determines that a person is in possession, custody, or control of a documentary evidence, wherever situated, that the attorney general believes to be relevant to an investigation authorized in AS 45.50.590, the attorney general may execute in writing and cause to be served upon that person an investigative demand requiring the person to produce the documentary material and permit inspection and copying.

8. AS 45.50.592(b) states:

 Each demand must

 (1) state the specific statute the alleged violation of which is under investigation, and the general subject matter of the investigation.

 (2) describe, with reasonable specificity so as fairly to indicate the material demanded, the documentary material to be produced;

 (3) prescribe a return date within which the documentary material is to be produced; and

 (4) identify the state employees or representatives to whom the documentary material is to be made available for inspection and copying.

of law, control the construction of the statute. In this matter of statutory interpretation, we look to the policy behind the statute and the reality of the relationship, rather than to the parties' contractual statement of the relationship.[9] Also, because the terms "independent contractor" and "employee" have different ramifications in different areas of the law,[10] contractual use of the term "independent contractor" cannot be determinative. The statutory term "authorized employee of the state" need not be understood as the equivalent of the common law term "employee," which is typically mutually exclusive of the term "independent contractor."[11] Instead "authorized employee" should be understood in its statutory context as a grant of investigative power to the attorney general. In that context, it can sensibly include private lawyers hired by the state to assist in antitrust investigations.[12]

Alaska Statute 45.50.592 is arguably ambiguous. The statute does not define its critical terms "authorized employee of the state," "representative," or "designee," and it is not facially obvious whether a private attorney hired by the attorney general should qualify as an "authorized employee." Definition of the relevant terms in this context is a matter of statutory construction. The purpose of statutory construction is "to give effect to the intent of the legislature, with due regard for the meaning that the statutory language conveys to others."[13] Statutory construction begins with the language of the statute construed in light of the purpose of its enactment.[14] If the statute is unambiguous and expresses the legislature's intent, statutes will not be modified or extended by judicial construction.[15] If we find a statute ambiguous, we apply a sliding scale of interpretation, where "the plainer the language, the more convincing contrary legislative history must be."[16]

### 3. Legislative history

Although the legislative history does not reveal specific intent for the meaning of the relevant statutory language, we discern two legislative concerns: (1) granting sufficient power to the attorney general to conduct thorough pre-litigation investigation, and (2) implementing procedural safeguards to protect companies from unfair treatment.

A February 10, 1975 letter from Governor Jay S. Hammond announcing the signing of AS 45.50 explained that "[a] provision of this nature is desirable because detection of violations of the antitrust laws is often a difficult matter requiring review of numerous business transactions which have occurred over

---

9. Because the meaning of "authorized employee" presents a matter of statutory interpretation, we reject Tesoro's argument that we should apply the "substantial evidence standard" to determine whether Hosie is an "authorized employee."

10. In medical negligence cases, for example, we have held that a hospital is not liable for a physician's negligence if the physician is an independent contractor selected by the patient. See, e.g., Ward v. Lutheran Hosp. & Homes Soc'y, 963 P.2d 1031, 1035 n. 5 (Alaska 1998) (explaining that the non-delegable duty doctrine simply makes explicit that "the hospital bears vicarious liability for the torts of at least some of its independent-contractor physicians"). In the workers' compensation context we have held that to determine whether someone is employee or independent contractor, "[i]f worker does not hold himself out to public as performing independent business service, and regularly devotes all or most of his independent time to particular employer, he is probably an "employee" regardless of other factors, which might indicate independent contractor status. See Benner v. Wichman, 874 P.2d 949, 952 (Alaska 1994)."

11. See generally Ward, 963 P.2d at 1034–35 (finding that an independent contractor is not an employee).

12. The State points out that the attorney general may require additional expertise to effectively enforce antitrust laws:

 Antitrust cases can be complex, and literally touch the lives of hundreds of thousands if not millions of consumers.... Where such complex antitrust investigations require national expertise, the department of law retains lawyers and economists to assist.

13. City of Dillingham v. CH2M Hill Northwest, Inc., 873 P.2d 1271, 1276 (Alaska 1994).

14. See Konecky v. Camco Wireline, Inc., 920 P.2d 277, 281 (Alaska 1996).

15. See id.

16. Id. (internal quotation omitted).

an extended period of time."[17] Governor Hammond went on to explain the dual concerns behind the law in question: "to provide the attorney general with the power he needs, but also to provide detailed procedural controls which will prevent unfair and arbitrary action by the attorney general."[18]

When the legislature enacted AS 45.50.592, it had already recognized the attorney general's authority to manage state litigation;[19] therefore, according to the State, it clearly intended to give the attorney general broad investigative powers. The statutory term "authorized employee of the state," in the State's view, "simply allows the attorney general the flexibility consistent with AS 44.23.020 ... to hire outside counsel at the attorney general's discretion, which is the attorney general's longstanding practice in complex cases."[20] Furthermore, the State argues, the United States Department of Justice has similar power under 15 U.S.C. § 1313(c)(3) and *Aluminum Co. of America v. United States Department of Justice.*[21]

It seems unlikely that the legislature, while giving broad investigatory powers to the attorney general, would wish to restrict the attorney general's ability to effectuate such investigations, or that it would create such a restriction without expressly indicating its intent. Indeed, an implied restriction of this kind would conflict with AS 45.50.592(e)'s express language granting the attorney general broad power to use the demanded materials in any way that the attorney general "considers necessary in the enforcement of this chapter," except when prior approval might prevent unwarranted disclosure of trade secrets in open court. Moreover, it is the long-standing practice of the Department of Law to hire outside counsel for complex matters.[22] To the extent that the legislature was concerned with confidentiality of documentation, it imposed upon outside counsel, and any others who review documents responsive to a CID, the same restrictions that AS 45.50.592 imposes on the attorney general. Outside counsel may not disclose any information to a third party unless authorized by the respondent or a court. Thus, interpreting the term "authorized employee of the state" to encompass outside attorneys addresses both legislative policies behind AS 45.50.592: adequate investigatory power of the state and confidentiality of respondents.

### 4. *Outside counsel as designee*

▪ Alaska Statute 45.50.592(e) states that "the Attorney General, or a *designee,* may use copies of the documentary material as the Attorney General or designee considers necessary in the enforcement of this chapter." (Emphasis added.) Tesoro argues that "the word 'designee' in [this] sentence simply means the State employee who is designated by the Attorney General as authorized to see CID documents, i.e., the 'authorized employee of the state' referred to in the first sentence of AS 45.50.529[sic] (e)." Because a "designee" can only be an "authorized employee of the state," Tesoro argues, Hosie cannot be a "designee" who "may use copies of the documentary material" produced by Tesoro. We disagree. The legislature's choice of the term "designee" indicates an intent to include persons other than "employees" of the attorney general within the group allowed access to CID-responsive documents. Although one may not commonly

---

**17.** Letter from Jay S. Hammond, Governor, to Mike Bradner, Speaker of the House of Representatives. 1975 House Journal 156, 159.

**18.** *Id.*

**19.** *See* AS 44.23.020 (detailing the powers and duties of the attorney general); *Public Defender Agency v. Superior Court,* 534 P.2d 947 (Alaska 1975) (holding that it would violate the doctrine of separation of powers for the court to control the exercise of the attorney general's discretion whether to take action in particular cases).

**20.** *See generally Atlantic Richfield Co. v. State, Dep't of Revenue,* 723 P.2d 1249, 1252 (Alaska

1986) (establishing recovery of attorney's fees where the State is represented by both the attorney general's office and private counsel).

**21.** 444 F.Supp. 1342 (D.C.Cir.1978).

**22.** We accordingly authorize awards of prevailing party attorney fees to the State for outside counsel services. *See Atlantic Richfield Co.,* 723 P.2d at 1252 ("When the state is represented by both private counsel and the attorney general's office, it may recover partial attorney's fees for both.").

think of outside counsel as an "employee," outside counsel easily falls within the common usage of "designee."

### 5. *Good cause*

 Tesoro suggests that the attorney general must demonstrate good cause to reveal documents to outside counsel without consent of the respondent. Alaska Statute 45.50.592(b)(4) requires that each demand for documentary evidence identify the "state employees *or representatives* to whom the documentary material is to be made available for inspection and copying." (Emphasis added.) Alaska Statute 45.50.592(e) requires that material produced pursuant to a CID may not be disclosed "unless otherwise ordered by a superior court for good cause shown . . . [to] anyone other than an *authorized employee* of the state without the consent of the person who produced the material." (Emphasis added.) Tesoro asserts that the legislature's failure to refer to both "state employees and representatives" in AS 45.50.592(e), as it does in AS 45.50.592(b)(4), demonstrates its intent to exclude representatives from the category of people to whom documents can be disclosed without consent. According to Tesoro, because Hosie, as outside counsel, is properly defined as a "representative" of the State, he is not, therefore, an "employee" who can have access to documents without a demonstration of good cause. Moreover, Tesoro contends that AS 45.50.592(b)(4)'s use of the term "representatives" does not expand the term "authorized employee" used in AS 45.50.592(e).

Tesoro's contention is unpersuasive. The legislature's inclusion of "representatives" in

AS 45.50.592(b)(4) indicates an intent to grant representatives who are not otherwise state employees the same access to documents as that afforded to state employees under this section. By specifying that the CID must identify state employees *or* representatives, AS 45.50.592(b)(4) places employees and representatives on equal footing for purposes of receiving documents produced in response to the CID.

[13] Moreover, we agree with the superior court's conclusion that the "good cause" section of AS 45.50.592(e) is intended for situations in which a third party seeks access to responsive documents, as was the case in *Novak v. Orca Oil Co.*[23] It seems unlikely that the legislature intended to restrict the attorney general's authority to conduct an investigation by requiring the attorney general to show good cause each time he or she requires outside legal expertise.

### C. *The Superior Court Applied the Correct Standard for Reviewing the CID.*

Tesoro contends that the superior court inappropriately reviewed the breadth and scope of the CID under a deferential "prosecutorial discretion" standard.[24]

Tesoro argues that deference to prosecutorial discretion is not warranted because this case raises no issues of separation of powers or unique regulatory expertise. The State responds that important policy considerations support granting broad investigatory power to the attorney general and interpreting the attorney general's antitrust subpoena powers consistently with Alaska Civil Rule 26(b):[25] "If the scope of the attorney gener-

---

**23.** 875 P.2d 756, 762–63 (Alaska 1994).

**24.** Tesoro identifies two statements of the court as evidence that it granted deference to the attorney general. First, Tesoro notes that in its written order, the superior court held: "Given the scope of the Attorney General's authority under the statute, *and the deference given to agencies with statutory investigative powers*, the Court finds that the CIDs are not unreasonable or improper." (Emphasis added.) Second, Tesoro quotes from the superior court's statements at oral argument: "I do have some questions, and they relate to the tension between this statute and the discretion, of course, *the prosecutorial discretion*, and—*that is held by the attorney gener-*

*al*—and I'll need to think that through." (Emphasis added.)

**25.** Civil Rule 26(b)(1) establishes the scope of discovery:

Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be

al's antitrust subpoena power is any less than that allowed by Civil Rule 26(b), the attorney general will be put in the untenable position of having to decide whether to file suit first to get adequate information."

The language of the statute provides the appropriate starting point for analysis. Alaska Statute 45.50.592(c)(2) provides that a CID may not "contain a requirement that would be *unreasonable or improper if contained in a subpoena duces tecum* issued by a court of the state." (Emphasis added.) Civil Rule 45(b)(1), which governs subpoenas duces tecum, permits courts to "void or modify the subpoena if it is *unreasonable or oppressive.*" [26]

We have not yet had an opportunity to explain in detail when a CID should be held unreasonable, improper, or oppressive. The State argues that our decision in *Matanuska Maid, Inc. v. State*[27] should control this analysis. There, we adopted the three requirements that federal courts use to examine CIDs: "[I]t is sufficient for fourth amendment purposes that the subpoena is issued pursuant to lawful authority, relevant to the inquiry for which it is issued and contains adequate specification of the documents to be produced." [28]

But in *Matanuska Maid,* we considered CIDs issued under AS 45.50.495 and former AS 45.50.200 [29] in light of constitutional provisions prohibiting unreasonable search and seizure.[30] The reasonableness standard set forth in *Matanuska Maid* therefore pertains to search and seizure, but not necessarily to the statute and Civil Rule 45.

Federal courts have adopted the same standard described in *Matanuska Maid* for judicial review of CIDs and other administrative subpoenas as well.[31] *In re Sealed Case* involved a motion to compel the production of documents pursuant to an administrative subpoena duces tecum.[32] The Circuit Court for the District of Columbia applied a standard of review almost identical to the *Matanuska Maid* standard: "Our role in a subpoena enforcement proceeding is limited to determining whether the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." [33]

Federal courts have shown deference to administrative agencies when reviewing administrative subpoenas for relevance.[34] The *In re Sealed Case* court explained that courts must "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not 'obviously wrong' " [35] For federal

---

admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

**26.** Alaska R. Civ. P. 45(b)(1) (emphasis added). Civil Rule 45(b) provides in full:

*For Production of Documentary Evidence.* A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may (1) void or modify the subpoena if it is unreasonable and oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents or tangible things.

**27.** 620 P.2d 182 (Alaska 1980).

**28.** *Id.* at 189.

**29.** *Id.* at 184. AS 45.50.590 was formerly AS 45.50.200.

**30.** 620 P.2d at 188.

**31.** Antitrust CIDs are administrative subpoenas. *See United States v. Markwood,* 48 F.3d 969, 976 (6th Cir.1995) ("It is clear from the legislative history that Congress viewed an antitrust CID as a type of administrative subpoena."); *cf. Matanuska Maid,* 620 P.2d at 189 (relying on federal cases on administrative subpoenas as authority in CID challenge). *Matanuska Maid* establishes precedent for looking to federal authority in the antitrust investigation context. *Id.* at 192.

**32.** 42 F.3d 1412, 1414 (D.C.Cir.1994).

**33.** *Id.* at 1415 (internal quotation omitted) (quoting *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950)).

**34.** *See e.g., In re Sealed Case,* 42 F.3d at 1419; *see also Markwood,* 48 F.3d at 977 (establishing federal standards for acceptability of administrative subpoenas).

**35.** *In re Sealed Case,* 42 F.3d at 1419 (internal quotation omitted) (quoting *Federal Trade Comm'n v. Invention Submission Corp.,* 965 F.2d 1086, 1089 (D.C.Cir.1992)).

courts, an inquiry must be "reasonably relevant to the general purposes of the agency's investigation."[36] The government agency may define the boundaries of the investigation "quite generally."[37] When an agency claims the information sought is relevant, federal courts "require the party challenging the investigation to bear the burden of demonstrating that the information sought is irrelevant."[38] This deference in establishing relevance is appropriate because "[a]t the investigatory stage, the Commission does not seek information necessary to prove specific charges; it merely has a suspicion that the law is being violated in some way and wants to determine whether or not to file a complaint."[39]

▮▮▮▮ The deferential approach to establishing relevance is sound. It is also supported by our holding in *Matanuska Maid* that the respondent bears the burden of proving whether a CID is reasonable.[40] We therefore hold that when a trial court reviews a CID under AS 45.50.592, it should examine whether the subpoena is "[1] issued pursuant to lawful authority, [2] relevant to the inquiry for which it is issued and [3] contains adequate specification of the documents to be produced."[41] We adopt the federal courts' deferential reasonable relevance standard to determine whether the subpoena is relevant to the inquiry for which it is issued.

We disagree with Tesoro that the superior court applied a criminal law-based "prosecutorial discretion" standard. We look to the superior court's written decision to ascertain the standard applied.[42] That decision explained: "Given the scope of the Attorney General's authority under the statute, and the deference given to agencies with statutory investigative powers, the Court finds that the CIDs are not unreasonable." This statement reflects the permissive relevance standard outlined above. We conclude that the superior court applied the correct standard of review for a CID.

### D. *The Superior Court Did Not Abuse Its Discretion by Holding the CID to be Reasonable and Not Oppressive.*

#### 1. *CID as a whole*

▮▮▮ Tesoro contends that the superior court erred by failing to modify the CID because the CID, which Tesoro calls "sweeping in scope," contains twenty-five pages, covers broad subject matter, and is "unreasonable and oppressive" under Rule 45(b)(1). Such a demand, argues Tesoro, is insupportable because it is "out of proportion to the end sought."[43]

Because the court applied the correct "deferential reasonable relevance" standard of review, we review the superior court's application of that standard to the facts in the case for an abuse of discretion.[44] Given the superior court's extensive factual and legal inquiry, as well as the substantial modifications it made to the CID, we conclude that the superior court did not abuse its discretion.

In the attorney general's opposition to Tesoro's petition to modify the CID, the State explained the purpose of the investigation:

---

36. *Id.* (internal quotations omitted).

37. *Invention Submission Corp.*, 965 F.2d at 1090.

38. *In re Sealed Case*, 42 F.3d at 1419.

39. *Invention Submission Corp.*, 965 F.2d at 1090.

40. *See Matanuska Maid*, 620 P.2d at 192 ("The burden of showing that an agency subpoena is unreasonable remains with the respondent, ... and where, as here, the agency inquiry is authorized by law and the materials sought are relevant to the inquiry, that burden is not easily met.") (quoting *Securities & Exch. Comm'n v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047 (2d Cir.1973)).

41. *Matanuska Maid,* 620 P.2d at 189.

42. Even though Judge Michalski mentioned the prosecutorial discretion held by the attorney general, the context of the statement indicates that the judge intended to consider the tension between that discretion and the relevant statute.

43. *McMann v. Securities & Exch. Comm'n,* 87 F.2d 377 (2d Cir.1937).

44. *See Invention Submission Corp.,* 965 F.2d at 1089 ("If the district court finds that the information sought by the agency is relevant, we will affirm unless that determination is clearly erroneous.").

Why are prices so high when sizeable volumes of gasoline and other petroleum products are refined here in Alaska? Are prices higher due to higher labor or refining costs in Alaska? Are prices higher due to increased transportation costs to Alaska? If gasoline prices are so high, why aren't traditional market forces attracting other companies to Alaska to compete for these abnormally large margins? With such high prices, why has gasoline actually been shipped out of Alaska, instead of being sold to Alaskans for the highest retail price in the nation? Are there agreements in place between the companies not to compete thus altering competition and other natural market forces? Have the companies "volumetrically divided" the Alaska gasoline market amongst themselves? Are there illegal barriers to entry in the market? Or, are there economic factors that can be identified and explained that are driving Alaska's gasoline prices through the roof?

Because it gave appropriate deference to the State's definition of the investigation, the superior court did not abuse its discretion in holding that the CID, while broad, was not unreasonable or oppressive in light of the breadth of the investigation.

That the court modified the CID in substantial ways also speaks to the court's proper use of its discretion. The court modified Instruction No. 1, which originally covered all Tesoro personnel, to apply only to "personnel with decision making authority, significant control over operations, marketing, acquisition or disposition of materials, pricing and sale of gasoline in Alaska, or strategy, or any other personnel that might assist, through research and drafting of memoranda or reports." Additionally, the court struck two vague and confusing requests in accordance with the requirement that demands be adequately specific,[45] and excluded Tesoro's operations in the Far East from the scope of the CID. We disagree with Tesoro's contentions that the court's amendments were superficial. The superior court's modifications show that it balanced the wide scope of the investigation with the burden of compliance to Tesoro.[46]

█ Furthermore, Tesoro's citation of *Williams v. City of Dallas*[47] is unpersuasive. In *Williams,* the court did not defer to the issuer of a subpoena duces tecum on the question of relevance, but in that case the issuer was a private civil rights litigant.[48] As described above, questions of reasonableness and relevance of administrative subpoenas duces tecum must be analyzed showing appropriate deference to the administrative entity issuing the document demand.

█ That this case involves possible antitrust violations also militates toward holding that the superior court's findings regarding the CID are not clearly erroneous. In general, there is a "policy of allowing liberal discovery in antitrust cases."[49] "Particularly where allegations of conspiracy or monopolization are involved," as in this case, "broad discovery may be needed to uncover evidence of invidious design, pattern or intent."[50]

### 2. *Temporal scope*

█ Tesoro argues that the State's investigation, although nominally broad, actually

---

**45.** *See Matanuska Maid,* 620 P.2d at 189.

**46.** Tesoro argues that compliance with the CID would require it to produce vast quantities of irrelevant documents at great expense. Tesoro's in-house counsel estimates that to respond to the CID, Tesoro would need to copy hundreds of banker's boxes of documents over the course of six to twelve months at a cost of hundreds of thousands of dollars.

**47.** 178 F.R.D. 103 (N.D.Tex.1998). The *Williams* court held that reasonableness must be determined by the particular facts of the case, including the party's need for documents and the nature and import of the litigation. *See* 178 F.R.D. at 109. Under *Williams,* "[a]mong the factors that the court may consider in determining whether there is an undue burden are relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, particularity with which the documents are described, and burden imposed." *Id.* (quotation omitted).

**48.** *See id.* at 106.

**49.** *Kellam Energy, Inc. v. Duncan,* 616 F.Supp. 215, 217 (D.Del.1985).

**50.** *Id.*

covers only one to two years because the phenomenon the attorney general has decided to investigate has only recently occurred. As evidence of the supposedly limited scope of the inquiry, Tesoro relies on the State's explanation for its need for the investigation as a response to the "Alaska Paradox," that even though Alaska has the largest oil field in North America, Alaskan consumers and businesses pay the highest retail tax-excluded gasoline prices in the country. To explain the "Alaska Paradox," the State supplies two graphic comparisons of gasoline and gasoline tax prices. One graph represents figures from 1997 and one represents figures from 1998. Therefore, reasons Tesoro, the investigation is aimed solely at explaining gasoline prices from the past several years.

■ Tesoro argues, citing *Kellam Energy, Inc. v. Duncan*,[51] that "[c]ourts have recognized that the temporal limits of a subpoena in the antitrust context can be ascertained by reference to the time period of the claims at issue." Based on the limited scope of the investigation, Tesoro suggests that the time period of discoverable documents should be five years, beyond which the State could request documents only after a "proper showing" to the superior court. According to Tesoro, this two-step approach would prevent the imposition of undue burden and expense to Tesoro while permitting the attorney general to perform its duty of investigation. We decline to impose Tesoro's two-step approach; such an approach has no statutory basis and has been rejected by courts.[52]

Tesoro's attempt to portray the investigation as only concerning recent gasoline pricing is wholly unconvincing. The two illustrative graphs in the State's trial brief are just that—illustrative. They do not limit or define the temporal scope of the investigation. In addition, numerous courts have held that "the temporal scope of discovery in antitrust suits should not be confined to the limitations of the antitrust statutes."[53] In light of the discussion of general deference to the government in investigative subpoenas, and the representations in the record which support the court's finding,[54] the superior court did not abuse its discretion by finding that documents dating back ten years are relevant to the investigation.

### 3. *Product scope*

■ The CID requests documents relating to "petroleum products," defined as "any of the following fuels: motor fuel gasoline, No. 2 diesel, low sulfur fuel oil, high sulfur fuel oil, heating oil, jet fuel, 'JP4' jet fuel, aviation gas, bunker/fuel oil and marine diesel." Tesoro argues that the investigation only focuses on one product, gasoline,[55] and therefore the CID should pertain only to documents relating to that product.

Tesoro contends that the statute's judicial review provisions and the judiciary's role is weakened if the attorney general can control the parameters of the request through its own definition of the investigation. As Tesoro correctly notes, AS 45.50.592 interposes the power of the courts into the administrative process to protect the public from unreasonable demands by the attorney general.

**51.** *Id.*

**52.** *See In re Sealed Case,* 42 F.3d 1412, 1417 (D.C.Cir.1994); *Federal Trade Comm'n v. Texaco, Inc.,* 555 F.2d 862, 874 (D.C.Cir.1977).

**53.** *Kellam,* 616 F.Supp. at 218 (citing *Wilder Enters., Inc. v. Allied Artists Pictures Corp.,* 632 F.2d 1135 (4th Cir.1980); *Empire Volkswagen, Inc. v. World–Wide Volkswagen Corp.,* 95 F.R.D. 398 (S.D.N.Y.1982); *Maritime Cinema Serv. Corp. v. Movies en Route, Inc.,* 60 F.R.D. 587 (S.D.N.Y.1973); *Quonset Real Estate Corp. v. Paramount Film Distrib. Corp.,* 50 F.R.D. 240 (S.D.N.Y.1970); *Schenley Indus., Inc. v. New Jersey Wine & Spirit Wholesalers Ass'n,* 272 F.Supp. 872, 887 (D.N.J.1967)).

**54.** At oral argument, the State explained that "trends require a period of time. If we're limited to a very small period, we don't believe that we'll be able to see the trends that we need to in order to determine whether or not there are any kind of combinations in restraint of trade." The State also pointed to the closure of Chevron's refinery in the early 1990s as support for the discretionary finding that the CID could reasonably cover ten years.

**55.** Tesoro refers to the attorney general's explanation of the "Alaska Paradox" for the focus of the investigation: "Alaskan consumers pay the highest retail tax-excluded *gasoline* prices in the country."

The superior court justified its holding that the State's request for documents regarding all "petroleum products" was reasonable with the statement that such documents would help the attorney general to "better understand how the movement of certain products within the market affects pricing of gasoline products."

Tesoro raises two objections to the court's explanation. On one hand, Tesoro argues that "[t]he Superior Court's reasoning is simply wrong. The pricing of such unrelated products as heating fuel or jet fuel, for example, has no relevance to the pricing of gasoline." On the other hand, even if that information was relevant, in Tesoro's view, the court erred by not considering the burden to Tesoro in producing these documents in relation to the attorney general's burden if the documents were not produced. According to Tesoro, "[t]he marginal relevance that documents relating to fundamentally different petroleum products may have with respect to the issue of gasoline pricing is vastly outweighed by the burden and expense Tesoro will incur in producing such documents to date."

At oral argument to the superior court the State addressed Tesoro's contention that the State's investigation only involved the issue of gasoline. The State argued that

> the reason we have asked for information beyond just gasoline is that a barrel, of course, is cut many different ways, depending on the hydrocarbons that are in the oil. Some parts of the oil are refined differently. We feel that in order to explain a particular margin on ... one cut of the barrel, we have to understand what the companies did with the other part.

Given the State's explanation of how documents regarding all types of petroleum products relate to the investigation, and the deference due such explanations,[56] the superior court's holding is not clearly erroneous. The superior court demonstrated a rational foundation for its holding: "The definition for 'petroleum products' shall remain intact as it is not an unreasonable request in order for the Attorney General to better understand how the movement of certain products within the market affects pricing of gasoline products."

In support of its request to limit the CID to gasoline-related documents, Tesoro cites *Covey Oil Co. v. Continental Oil Co.,* a case in which one petroleum company alleged antitrust violations by another, relating to the price of gasoline.[57] After the defendant company served a subpoena duces tecum on a non-party witness, the district court modified the subpoena to cover only gasoline products.[58] Tesoro argues that here a similar modification should have been ordered in accordance with its requests for relief.

We agree with the State that the holding in *Covey Oil* is inapt. *Covey Oil* dealt with a private antitrust action; in contrast to an agency investigation, the private petitioner's request did not warrant deference. Moreover, the opinion does not clearly indicate the scope of the products at issue in the case. The trial court's modifications to the subpoena did not necessarily have anything to do with the range of petroleum products included in the subpoena.[59] That Tesoro was able to find a case discussing a subpoena which covered only gasoline does not persuade us that a similar subpoena is appropriate here, particularly where the burden of proof rests with Tesoro.[60] We therefore affirm the superior court's holding that Tesoro must produce documents relating to "petroleum products" as originally defined in the CID.

## IV. CONCLUSION

Because Hosie, as outside counsel to the State, should be considered "an authorized employee of the state" for purposes of AS 45.50.592(e), because the superior court re-

---

56. *See In re Sealed Case,* 42 F.3d at 1419.

57. 340 F.2d 993 (10th Cir.1965), *implicitly overruled on other grounds by United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), *see Federal Trade Comm'n v. Alaska Land Leasing, Inc.,* 778 F.2d 577, 578 (10th Cir.1985).

58. 340 F.2d at 996.

59. *See id.* at 997.

60. *See Matanuska Maid, Inc. v. State,* 620 P.2d 182, 192 (Alaska 1980).

viewed the CID under the correct standard, and because the superior court was within its discretion in holding that the CID was not unreasonable, improper, or oppressive, we AFFIRM the superior court's decision in all respects.

EASTAUGH, Justice, not participating.

MATTHEWS, Justice, dissenting.

Is the law firm retained by the state an "employee of the state" under AS 45.50.592(e)? I answer "no" because ordinary usage controls the meaning of undefined statutory terms, "employee" in ordinary usage means a natural person employed for a wage or salary, and the firm meets neither of these elements. Further, this conclusion is consistent with cases interpreting a similar federal statute, better protects the intended confidentiality of CID material, and is not inconsistent with other terms of the statute.

Alaska Statute 45.50.592(e) prohibits the disclosure of documentary material produced pursuant to an investigatory demand to "anyone other than an authorized employee of the state" unless the person who produced the documents consents or unless the superior court "for good cause shown" permits disclosure.[1] In determining what a statute means, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."[2] The ordinary, contemporary, and common meaning of the term "employee of the state" "means a person employed by the state who is paid a wage or salary but does not include a person hired by the state to work as an independent contractor...."[3] As today's opinion acknowledges, the term "employee" "is typically mutually exclusive of the term 'independent contractor.'"[4] "Employee" is synonymous with "servant" and is often used in contradistinction to "independent contractor."[5] In com-

1. AS 45.50.592 provides in relevant part:

 (a) If the attorney general determines that a person is in possession, custody, or control of a documentary evidence, wherever situated, that the attorney general believes to be relevant to an investigation authorized in AS 45.50.590, the attorney general may execute in writing and cause to be served upon that person an investigative demand requiring the person to produce the documentary material and permit inspection and copying.
 (b) Each demand must
 ....
 (4) identify the state employees or representatives to whom the documentary material is to be made available for inspection and copying.
 ....
 (d) The demand may be served by the attorney general or the designee of the attorney general....
 (e) Documentary material produced pursuant to a demand, or copies of it, unless otherwise ordered by a superior court for good cause shown, may not be produced for inspection or copying by, nor may its contents be disclosed to, anyone other than an authorized employee of the state without the consent of the person who produced the material. However, under those reasonable terms and conditions the attorney general prescribes, copies of the documentary material shall be available for inspection and copying by the person who produced the material or an authorized representative of that person. The attorney general, or a designee, may use copies of the documentary material as the attorney general or designee considers necessary in the enforcement of this chapter, including presentation before a court;

 however, material that contains trade secrets may not be presented except with the approval of the court in which the action is pending after adequate notice to the person furnishing the material.
 ....
 (h) Nothing in this section impairs the authority of the attorney general or a designee to lay before a grand jury of this state evidence concerning a violation of AS 45.50.562–45.50.596, to invoke the power of a court to compel the production of evidence before a grand jury, or to file a civil complaint or criminal information alleging a violation of AS 45.50.562–45.50.596.

2. *State v. Niedermeyer,* 14 P.3d 264, 272 n. 38 (Alaska 2000).

3. This definition is contained in the state personnel act, AS 39.25.990(4).

4. Slip Op. at 537. An example of the customary exclusivity of the terms "employee" and "independent contractor" is found in the contract entered into by state in this case with Hosie, Frost & Large, Attorneys at Law. Article 8 of the contract provides: "Independent Contractor. The contractor [Hosie, Frost & Large] and any agents and employees of the contractor act in an independent capacity and are not officers or employees or agents of the State in the performance of this contract."

5. Black's Law Dictionary "Employee" (Rev. 4th ed.).

mon usage, a person who performs services for another is either an employee or an independent contractor, and an important factor in determining one from the other is the right to control retained by the person contracting for the services.[6] Further, the word "employee" denotes in ordinary usage a natural person rather than a partnership or a corporation.[7] In prohibiting disclosure to "*anyone* other than an authorized employee of the state" the legislature's usage is in accordance with the meaning of "employee" as a natural person. In this case the particular independent contractor with which we are concerned is a private San Francisco law firm, Hosie, Frost & Large, Attorneys at Law. There is no dispute that "one may not commonly think of outside counsel as an 'employee'...."[8] Based on the rule that words should be interpreted in accordance with their ordinary and common meaning, I believe that Hosie, Frost & Large, Attorneys at Law, is not "an employee of the state" under AS 45.50.592(e).

Alaska Statute 45.50.592 was enacted in 1975 as part of a comprehensive act prohibiting monopolies and combinations in restraint of trade.[9] Governor Hammond's letter to the Speaker of the House transmitting the bill that became this act makes it clear that the bill is patterned on federal law.[10] The Governor noted that what is now section .592 contained a number of procedural protections and limitations:

> Section [.592] establishes specific guidelines for the contents of the demand and method of serving the demand upon a person, where the material demanded is documentary evidence. It provides that no demand may seek material which is privileged nor may it be unreasonable. *Subsection (e) forbids disclosure of the documentary evidence to anyone other than an authorized state employee without the permission of the person who produced the material.*[11]

Concerning these limitations the Governor wrote:

> The theory behind Article 3 [dealing with investigatory powers] is to provide the attorney general with the power he needs, but also to provide detailed procedural controls which will prevent unfair and arbitrary action by the attorney general. Section [.592] of the bill prescribes the contents of a demand and establishes limits on the breadth and scope of the demand.[12]

Governor Hammond also noted the similarity between federal law and the proposed bill with respect to the power to compel the production of documents: "Article 3 of the bill grants to the attorney general the power to compel production of documents and testimony prior to filing an action in court. Several states have enacted similar provisions. The federal government also has similar powers to compel production of documents...."[13]

Federal law as of 1975 prohibited the disclosure of documentary material produced pursuant to an investigative demand "by any individual other than a duly authorized officer, member, or employee of the Department of Justice."[14] This was changed somewhat in 1976. Section 1313(c) of 15 U.S.C. was

---

6. See *Bobich v. Stewart*, 843 P.2d 1232, 1235 (Alaska 1992); *Sievers v. McClure*, 746 P.2d 885, 888 (Alaska 1987) ("[I]n determining whether a person is an employee or an independent contractor, the most important factor is the right to control the manner and means by which the work is to be performed.").

7. Webster's Third New International Dictionary 743 (1966): employee: "**1:** one employed by another usually in a position below the executive level and usually for wages **2:** *in labor relations:* any worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker."

8. Slip Op. at 539.

9. See ch. 53, SLA 1975.

10. "The substantive provisions of this bill follow closely the language of the corresponding federal law. The advantage to using language closely paralleling the federal anti-trust laws is that a large body of case law interpreting this language is already in existence." 1975 House Journal 156.

11. 1975 House Journal 158 (emphasis added).

12. *Id.* at 160.

13. *Id.*

14. 15 U.S.C. § 1313(c) (1970).

divided into four subsections. The third subsection prohibited the disclosure of documentary material to "any individual other than a duly authorized official or employee of the Department of Justice."

Both of these versions of section 1313(c) were interpreted by courts as imposing a firm prohibition on the disclosure of produced materials to individuals not employed by the Department of Justice. Thus in *AL-COA v. United States Department of Justice,* the court observed concerning the 1970 version of section ˙1313(c): "The statute . . . *absolutely prohibited disclosure to third parties . . . .*" [15] In *United States v. GAF Corp.* the district court similarly interpreted the language of section 1313(c) to preclude an examination of produced material "by anyone outside the Department of Justice." [16] On appeal in the same case the Second Circuit interpreted 15 U.S.C. § 1313(c)(3) to preclude disclosure of CID materials outside the Department: "That subsection provides that no material obtained by CID may be made available for examination by *anyone other than the Department of Justice.*" [17] And in *United States v. AT & T* the court stated that section 1313(c)(3) "specifically prohibits disclosure of CID material to persons *not members of the Justice Department.*" [18]

Thus, courts interpreting "authorized employee" language in the federal statute on which the "authorized employee" language in the state statute is patterned have interpreted that language to refer to employees, not independent contractors. In my view we should do likewise. [19]

Interpreting "employee of the state" in subsection .592(e) to have its ordinary meaning is consistent with the policy of the act and does not create necessary conflicts with other provisions of the act. In his letter of transmittal Governor Hammond mentions the "detailed procedural controls" imposed on investigatory demands. One such control is inherent in the distinction between employees and independent contractors. By definition of the respective terms, the state has much greater control over the actions of its employees than it does over the actions of independent contractors. Moreover, independent contractors may serve many masters simultaneously, while state employees work only for the state. Independent contractors thus can have collateral uses for investigatorily demanded information and they may be tempted to use such information. [20] State employees, by contrast, are less likely to be able to use CID information in the service of others, and they are thus not subject to the same temptations as independent contractors.

Another control is inherent in the fact that an employee is a natural person, whereas independent contractors may be partnerships or corporations having, in turn, many employees. Both legally and practically the state has more ability to control the activities of its actual employees than it does the employees of its independent contractors.

15. 444 F.Supp. 1342, 1344 (D.D.C.1978) (emphasis added).

16. 449 F.Supp. 351, 353 (S.D.N.Y.1978).

17. *United States v. GAF Corp.,* 596 F.2d 10, 12 (2d Cir.1979) (emphasis added), reversing on other grounds the district court opinion.

18. 86 F.R.D. 603, 647 (D.D.C.1979) (emphasis added).

19. Congress amended section 1313 for a third time in 1980. In the 1980 amendments the permitted class of those who may view CID material is expanded to include "duly authorized . . . agent[s] of the Department of Justice" as well as officials and employees of the department. *See* 15 U.S.C. § 1313(c)(3) (1980). "Agent" in turn was defined in terms broad enough to include independent contractor attorneys retained by the Department of Justice. *See* 15 U.S.C. § 1311(j) ("Agent" "includes any person retained by the Department of Justice in connection with the enforcement of the anti-trust laws."). In the 1980 amendment Congress also made an "agent" subject to criminal penalties for disclosure of confidential information. *See* 18 U.S.C. § 1905.

20. Concern about collateral uses that independent contractors may have for CID materials is more than theoretical in this case. Tesoro argued before the superior court that Spencer Hosie, one of the partners of Hosie, Frost & Large, is acting as the attorney for the State of Hawaii in an anti-trust suit brought against Tesoro. Counsel suggested that Hosie will obtain, under the Alaska CID, material that was denied him by a court in the Hawaii litigation.

Construing "employee of the state" in its ordinary sense would not mean an end to the use by the attorney general of outside counsel. What it would mean is that before material produced may be disclosed to personnel employed by contracting law firms the attorney general must make a showing of good cause under the first sentence of AS 45.50.592(e). The reasons that justify hiring outside counsel might well generally suffice to justify disclosure. But the good cause hearing would give the target company an opportunity to give case-specific reasons to oppose the disclosure, and depending on the circumstances, the court might impose special conditions and safeguards in connection with the disclosure.

Construing "employee of the state" to have its ordinary meaning also does not conflict with the "designee" language in the last sentence of subsection (e). This sentence authorizes the attorney general to appoint a "designee." But this does not imply that the designee must not also qualify as a person to whom disclosure may lawfully be made. Statutes should be construed so that each term has meaning if this is reasonably possible. Constructions in which one term negates another are to be avoided.[21] Thus the power of the attorney general to appoint a designee should not be construed in a way that eliminates the protection built into the statute by the disclosure limitations expressed in the first sentence of subsection (e). This can readily be accomplished by construing subsection (e) as requiring that the attorney general's designee be a person who qualifies for disclosure of CID material. In other words, the designee must either be an authorized employee or a person authorized to receive disclosures by a court order following a showing of good cause. Similarly, the term "representatives" used in subsection (b)(4) should mean, if all the terms of the statute are to be harmonized, either authorized employees or persons authorized by a court to receive disclosures.

The final sentence of subsection (e) provides that the attorney general or his designee "may use copies of the documentary material as he considers necessary in the enforcement of this chapter, including presentation before a court...." There is a tension between this provision and the disclosure-restricting provision of the first sentence of subsection (e). What if the use decided upon by the attorney general involves disclosure to non-state employees? But this tension exists no matter how "employee of the state" is defined. Similar tension existed in the 1976 version of the federal act. Under 15 U.S.C. § 1313(d) an attorney designated to appear in any case or proceeding could use CID material "in connection with any such case ... or proceeding as such attorney determines to be required." This language is not greatly different from the discretionary authority granted in the fourth sentence of subsection (e) ("use ... as the ... designee considers necessary in the enforcement of this chapter"). But the presence of this provision did not prevent the federal courts from giving a literal interpretation to "authorized ... employee" in subsection (c)(3).[22]

It would be presumptuous in this dissent to try to work out all the possible ramifications of the interplay between the provisions of the first and last sentences of subsection .592(e). But I believe that one key to understanding how they interact is found in the fact that the final sentence relates to enforcement. The 1975 act is divided into four articles: "Article 1. Substantive Provisions," "Article 2. Enforcement Provisions," Article 3. "Investigatory Powers," and "Article 4. General Provisions." The final sentence of subsection .592(e) is limited to uses for "enforcement." Thus it may not apply, given the structure of the act, to investigative proceedings conducted under the third article of the act.[23] Under this construction there is no necessary conflict between the use clause of the final sentence of subsection (e) and

---

21. *See In re Estate of Hutchinson,* 577 P.2d 1074, 1075–76 (Alaska 1978).

22. *See* cases cited *supra,* p. 547.

23. Such a construction is also supported by the language "including presentation before a court"

in the final sentence of subsection (3). This language independently suggests that the broader uses that are permitted must be related to enforcement proceedings.

interpreting "authorized employee" in the disclosure restricting clause of the first sentence to refer only to actual state employees. Disclosure outside the circle of authorized state employees is authorized under the use clause if a case reaches the enforcement stage, but not until then.

In summary, I believe that "employee of the state" in AS 45.50.592(e) should be construed to communicate the meaning that the term "employee of the state" would convey in ordinary and common usage. As so construed, subsection .592(e) would bar the disclosure without court approval of CID documents to a law firm with a contract with the state. For these reasons I would reverse the decision of the superior court and remand this case for a hearing to determine whether there is good cause to disclose Tesoro's records to the law firm retained by the state in this case.